**William C. FERGUSON, Plaintiff-Appellant,**

**v.**

**Alvin I. THOMAS et al., Defendants-Appellees.**

**No. 28227.**

United States Court of Appeals, Fifth Circuit.

June 23, 1970.

Rehearing Denied Aug. 13, 1970.

Sam Houston Clinton, Jr., Clinton & Richards, Austin, Tex., for appellant.

Jack Sparks, Asst. Atty. Gen. of Texas, Crawford C. Martin, Atty. Gen. of Texas, Nola White, First Asst. Atty. Gen., Pat Bailey, Executive Asst. Atty. Gen., J. C. Davis, Asst. Atty. Gen., Austin, Tex., for appellees.

Before THORNBERRY, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The District Court denied relief to Dr. William C. Ferguson after a plenary trial of his claims that the defendant officials of Prairie View A. & M. College terminated his employment as an instructor and refused to approve his off-campus residence hall for student use because he exercised rights of expression and association protected by the Federal Constitution. He also alleged that the procedures followed in effectuating his termination denied him due

process of law.[1] Finding no violation of any right cognizable by the court below as to the termination of his employment, we affirm that court's final judgment insofar as it dismissed that claim. However, the trial court did err in ruling on the basis of nonjoinder of a local party, that it lacked jurisdiction to rule on the claim related to the College's refusal to approve Dr. Ferguson's off-campus student residence. We reverse and remand as to that issue.

## TERMINATION OF EMPLOYMENT

Dr. Ferguson came to Prairie View A. & M. College, an institution in the Texas A. & M. University System, in September of 1958 as head of the Department of Business Administration, with an educational background which included a Ph.D. in Business Administration and prior teaching experience. He remained in this position until 1965, when he ceased to be head of the department but continued to teach in the department as a full professor. No instructor or administrator at Prairie View A. & M. College had tenure in the technical sense of that term. Contracts of employment were made annually on either a nine or twelve-month basis. Decisions to offer continued employment to personnel already on the college's staff were based upon the recommendations of the instructor's senior faculty members and the Dean and President of the college, and were subject to the final approval of the Board of Directors of the Texas A. & M. University System under Art. 2613[1]. Tex.Rev.Civ.Stat.Anno. Subsection 6 of this same statute vested authority in this Board to make such by-laws, rules and regulations as it deemed necessary for the proper government of the college and its faculty.

At the time this alleged cause of action arose the applicable rules and regulations of the Texas A. & M. University System provided that "officials, teachers and employees shall be appointed by the respective executive in charge (of each institution), subject to confirmation by the Board of Directors. Officials, teachers and other employees shall be subject to dismissal for cause at any time by the Board of Directors or by the executive in charge, subject to review by the Chancellor (of the Texas A. & M. University System) and the confirmation of the Board of Directors." No procedures were specified for such appointment, confirmation, dismissal or review. No mention whatever was made of the subject of administrative determinations not to offer renewal or consecutive contracts of employment within the System.

A number of irritations, disagreements and disputes between Dr. Ferguson and the college administration manifested themselves during the course of the 1966–1967 school term. These matters reached a high point in a mid-April 1967 confrontation which occurred the day after Dr. Ferguson took one of his Business Law classes from its regularly assigned classroom space to the campus auditorium to enable students to discuss campus grievances with several of the members of a teacher-student organization. The President of Prairie View College, Dr. A. I. Thomas, called Dr. Ferguson to his office and, in the presence of a number of administrative and faculty personnel and two students he had gathered for the occasion, he served upon Dr. Ferguson a document containing fifteen "guidelines" relating to performance of his duties as an instructor. No copy of this document had been served on Dr. Ferguson before he reached the meeting. After allowing him to read it and to make a brief objection, the meeting was dismissed. A sixteenth point in the "guidelines" placed Dr. Ferguson on temporary probation for the balance of his contract teaching period. The "guidelines" were specifically applicable

---

1. Dr. Ferguson died February 10, 1970. Pursuant to the provisions of Rule 43, F.R.A.P., his surviving widow, sons and daughters have been substituted as parties-appellant.

to Dr. Ferguson and were not applicable to any other instructor at the college.

On July 15, the Dean of his college department notified Dr. Ferguson that " * * * beginning September 1, 1967 we are terminating your services to the college." When Dr. Ferguson challenged the correctness of this unreasoned notice, President Thomas at first advised him by letter that college policy permitted his services to be terminated without cause on thirty days notice. The President noted his agreement with the termination in the same letter. President Thomas then discovered that his termination without cause statement was in error under the prevailing practices of the University System. Therefore, on the next day he dispatched a more lengthy letter to Dr. Ferguson which set out and detailed three reasons for the termination of his services. The reasons given were: (1) the dispute between Dr. Ferguson and the head of the Business Administration Department relative to making that department into a separate school of the college hampered proper operation of the department, (2) the use of classroom periods for discussions with students unrelated to the subject matter required to be taught resulted in inferior instruction, (3) the limitations of Dr. Ferguson's health. The record developed in the trial court demonstrated that at the time of this letter President Thomas had before him factual support for each of the three reasons.

Dr. Ferguson requested a hearing on his termination before the Board of Directors of the Texas A. & M. University System and asked that the head of his department and his college dean be present at the meeting. The Board advised Dr. Ferguson that they would hear him but would not hear from the department head or dean until after he had presented his case. On the day appointed, President Thomas and Dr. Ferguson appeared before the Board of Directors. President Thomas outlined the reasons why Dr. Ferguson was not offered another contract of employment. These were the same three reasons set out in his detailed letter. After this statement was made Dr. Ferguson was given the opportunity to make a response and to give such explanation as he cared to make to the Board, which he proceeded to do. Approximately a week later, and without hearing from the department head or dean, the Board wrote Dr. Ferguson: "The Board of Directors considers this to be an administrative matter to be handled by President Thomas and President Rutter (the President of the University System)." Dr. Ferguson was not reemployed.

The court entered no formal findings of fact or conclusions of law, but at the conclusion of the proof, dictated a statement into the record. In substance, the court found: Dr. Ferguson was not on tenure, the 15-point guideline and temporary probation document put Dr. Ferguson on notice that his activities were not in keeping with college administrative policies, Dr. Ferguson was given the opportunity to speak at the meeting where these guidelines were laid down, Dr. Ferguson received formal notice that he would not be reemployed, Dr. Ferguson received the equivalent of a hearing in the sense that he was presented with the complaints against him and afforded an opportunity to speak in response to these complaints at the faculty, administrative and university board levels; and, on these findings the court concluded: that it did not need to reach a decision on the merits as to whether Dr. Ferguson was a competent teacher, and, that Dr. Ferguson had been deprived of no constitutional right because the procedures applied to him met the fundamental rudiments of fair play.

At the threshold we must determine Dr. Ferguson's legal relationship to Prairie View College and the University System. It is admitted that he was employed for a limited period of time, that that time period expired and no new contract for subsequent employment was tendered to him. It is also admitted that he had no tenure, and thus no right to additional employment. Pred

v. Board of Public Instruction, 415 F.2d 851 (5th Cir. 1969). But a college can create an obligation as between itself and an instructor where none might otherwise exist under the legal standards for the interpretation of contract relationships regularly applied to transactions in the marketplace if it adopts regulations or standards of practice governing nontenured employees which create an expectation of reemployment. Greene v. Howard University, 134 U.S. App.D.C. 81, 412 F.2d 1128 (1969).

In the case at bar, the evidence adduced from defendant college officials establishes two points of major importance to the case sub judice. First, they consistently denominated and treated their action in Dr. Ferguson's case as a *termination* of his employment rather than a decision not to offer him a new or subsequent term of employment. Second, they conceded that under prevailing practices, a decision not to offer such an instructor a renewal contract of employment required a showing of cause. Their treatment was sufficient to create for Dr. Ferguson an expectancy of reemployment that required that his termination be accomplished under procedures which would accord him the fundamentals of due process. Indeed, the requirement to show cause for termination necessarily presupposes the right to notice and a hearing. Freeman v. Gould Special School District, 405 F.2d 1153 (8th Cir. 1969).

The rudiments of due process fair play in school administrative proceedings have been well outlined in this circuit with regard to the rights of college students who were subjected to disciplinary suspensions. They are entitled to a statement of the charges against them, the names of witnesses, the nature of the testimony of those witnesses and the opportunity of presenting a defense. Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961). These same minimum standards are applicable to teachers who have an expectancy of reemployment. However, the standards of procedural due process are not wooden absolutes. The sufficiency of procedures employed in any particular situation must be judged in the light of the parties, the subject matter and the circumstances involved.

Within the matrix of the particular circumstances present when a teacher who is to be terminated for cause opposes his termination, minimum procedural due process requires that:

(a) he be advised of the cause or causes for his termination in sufficient detail to fairly enable him to show any error that may exist,

(b) he be advised of the names and the nature of the testimony of witnesses against him,

(c) at a reasonable time after such advice he must be accorded a meaningful opportunity to be heard in his own defense,

(d) that hearing should be before a tribunal that both possesses some academic expertise and has an apparent impartiality toward the charges. (Note the dictum in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) at 391 U.S. 578, n. 2, 88 S.Ct. 1731).

When no established procedures exist the school may adopt any method that is adequate to comply with the above minimums. Freeman v. Gould Special School District, supra. When published rules and regulations establish a particular statutory procedure for the termination of a teacher's employment, they may add to the constitutional minimum. If they do, such regulations must also be followed. We doubt the wisdom of requiring the college to initially detail all its charges in such cases. In the majority of terminations for cause many adversary matters would be best left unsaid for the future good of the instructor and the institution. At the outset, the college need merely indicate that termination for cause is in the offing. If the professor accepts the situation, so be it. If the professor challenges the termination, then the college

should come forward with its slate of reasons and the above procedures thus commence.

■ The substance of due process requires that no instructor who has an expectancy of continued employment be deprived of that expectancy by mere ceremonial compliance with procedural due process. While he has no right to continued public employment, such a teacher may neither be dismissed or not be rehired for constitutionally impermissible reasons such as race, religion, or the assertion of rights guaranteed by law or the Constitution. This rationale would even apply to a teacher without tenure or an expectancy of reemployment. Pred v. Board of Public Instruction, supra; Johnson v. Branch, 364 F.2d 177 (4th Cir. En Banc, 1966), cert. den. 385 U.S. 1003, 87 S.Ct. 706, 17 L.Ed.2d 542 (1967); Freeman v. Gould Special School District, supra; contra, Jones v. Hopper, 410 F.2d 1323 (10th Cir. En Banc, 1969), cert. den. 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970).

In applying these principles to the facts of this case we note that the lower court found that the 15-point "guideline" —temporary probation document put Dr. Ferguson on notice of the activities on his part that the administration questioned. This however is all that can be correctly said for this procedure. The opportunity that Dr. Ferguson was given to speak in opposition to this document was not a fair opportunity. The "guidelines" had not been served on him until his arrival at the meeting; this fell short of according him a reasonable opportunity to voice his dissent and opposition.

■ Ordinarily a college would not have the right to single out one instructor for the imposition of restrictions which are not applicable to all others similarly situated. Here, President Thomas's explanation that these guidelines were imposed to strengthen Dr. Ferguson's teaching ability by detailing the points the administration considered weak, together with the fact that he was not terminated for the violation of these guidelines per se, distinguishes this procedure from Trister v. University of Mississippi, 420 F.2d 499 (5th Cir. 1969), where the court proscribed the right of a college to discharge a professor for refusing to restrict his activities in a significantly different manner from those permitted other professors in the same school.

Although the record demonstrates that Dr. Ferguson informally exchanged correspondence and talked at length with members of the college faculty and administrative staff after he received notice of his termination, this will not support a finding that Dr. Ferguson was accorded procedural due process at the faculty or administrative level by such intercourse. These interchanges were extemporaneous and were never shown to have been conventionally weighed as adversary responses by an officer or group charged with acting on his grievance. Due process requires a more formalistic confrontation of facts and positions.

■ Dr. Ferguson did, however, receive a detailed notice from President Thomas of the reasons relied upon for his termination, which also fully alerted him to the identity and nature of the contentions of the administrative personnel who would support these reasons. A reasonable time after the service of this notification he was accorded an opportunity to appear before the Board of Directors of the University System and to reply to each of these reasons. He was fully advised of the reasons for his termination and was given an opportunity to present his defenses to these reasons. Any complaint he may have had concerning the procedural sufficiency of this process must necessarily have been based primarily upon the fact that he was not given the opportunity to call the two other administrative staff members he had requested be heard by the Board. This failure to hear requested witnesses, when taken together with the fact that no transcript or written record of the Board proceedings was kept or made and no findings of fact

were rendered by the Board, could deprive these proceedings of that necessary inherent fairness which due process demands. It may thus have failed to accord Dr. Ferguson a meaningful opportunity to present his defenses to the charges against him, to which we hold him entitled. However, we do not need to reach this issue in this case for the reason hereinafter set out.

In the court below, Dr. Ferguson was allowed to depose witnesses in advance of the hearing and to call and cross-examine all witnesses he chose to call or cross-examine relative to the procedures followed in, as well as the merits of, terminating his services. Included in this group of witnesses were both of the men Dr. Ferguson wanted to present to the Board. Each and both of these administrators testified in the court below to even more damaging facts than those President Thomas presented to the Board. The department head who Dr. Ferguson was so anxious to call described him as a svengali who courted favor with the students at the expense of their education, then used the influence and power gained with the students as a threat against anyone who confronted him concerning matters of discipline or academic excellence. This condition intimidated the department head to the extent that some of his open criticisms of Dr. Ferguson were very much milder than his true feelings warranted (a condition which evidently badly mislead Dr. Ferguson).

Since the very witnesses Dr. Ferguson wanted to present have now testified and it is clear from their testimony that they would have greatly enhanced the basis of the Board's action in affirming his termination, it is not necessary for this cause to be remanded to the district court for referral back to the school board. Justice and fairness to all parties indicates that his termination may be affirmed here and now. *Compare* Stevenson v. Board of Education of Wheeler County, 426 F.2d 1154 (5th Cir. 1970).

Although the procedure followed by the district court in this case has enabled us to dispose of this appeal, we believe that the proper administration of justice requires that we caution against any similar court procedures which would allow the full development of the merits of a case of this type as a matter of course. To do so routinely in every such case constitutes both an intrusion into the internal affairs of state educational institutions and an unwise burden on judicial administration of the courts. School constituted review bodies are the proper forums for thrashing out such matters. Federal Court hearings in cases of this type should be limited in the first instance to the question of whether or not federal rights have been violated in the procedures followed by the academic agency in processing the plaintiff's grievance. If a procedural deficit appears, the matter should, at that point, be remanded to the institution for its compliance with minimum federal or supplementary academically created standards. This should be done so that the matter can first be made ripe for court adjudication by the school authorities themselves. Stevenson v. Board of Education of Wheeler County, supra. *See also*, French v. Bashful, 425 F.2d 182 (5th Cir. 1970). If no federal right has been violated in the procedures followed, then the court should next look to the record as developed before the academic agency to determine whether there was substantial evidence before the agency to support the action taken, with due care taken to judge the constitutionality of the school's action on the basis of the facts that were before the agency, and on the logic applied by it. Johnson v. Branch, supra. If the procedures followed were correct and substantial evidence appears to support the Board's action, that ordinarily ends the matter.

If the instructor challenges his termination on grounds that his constitutional rights have been infringed, a decision of that claim may and should be avoided if valid non-discriminatory grounds are

shown to have been the basis of the institution's action. In closer cases where it is unclear whether a valid basis did exist for the school's action and where the professor's exercise of constitutional rights played an intimate role in the termination decision, the problem should be resolved by striking a balance between the interests on the one hand of the teacher as a citizen in commenting upon matters of public concern and enjoying freedom of association, and the interests on the other hand of the state as an employer in promoting the efficiency of the public service it performs through its employees. Pickering v. Bd. of Education, supra; and Slochower v. Board of Higher Education, 350 U.S. 551, 76 S. Ct. 637, 100 L.Ed. 692, reh. den. 351 U.S. 944, 76 S.Ct. 843, 100 L.Ed. 1470 (1956). See also Scoville v. Board of Education, 425 F.2d 10 (7th Cir. En Banc, 1970). Here the proof before the district court showed that Dr. Ferguson exercised his rights of speech and association to such an extent as to seriously impair, if not to destroy, his effectiveness as an instructor in an organized program of academic tutoring. This was his choice to make. The college had no right to control his speech or to curtail his freedom of association, but they did have a right to terminate his employment as a classroom instructor at the point where the exercise of his constitutional privileges clearly over-balanced his usefulness as an instructor.

■ It is not our intention to create, by the procedures recommended, a hybrid form of appellate review jurisdiction in the federal district courts under 42 U.S. C.A. § 1983 (1970). Compare the dissent in Esteban v. Central Missouri State College, 415 F.2d 1077 (8th Cir. 1969). Rather, our objective is to make actions brought under § 1983 in circumstances similar to these, most effective by channeling the court procedures to a determination (a) that the complainant was accorded due process in the proce-

dures by which he was terminated, *and* (b) that the board had before it substantial evidence to support its conclusion. We do not foreclose the possibility of some extraordinary case where, despite procedural and substantive regularity, an unconstitutional result is reached. It should go without saying this must be corrected. Since § 1983 vests original and not appellate jurisdiction in the district courts,[2] the findings of a college board of directors or similar school review agency are not to be accorded the stature of findings of a district court under Rule 52 Fed.R.Civ.P. or the findings of a federal agency subject to review under the Administrative Procedure Act, 5 U.S.C.A. § 551 *et seq.* (1967). But such findings, when reached by correct procedures and supported by substantial evidence, are entitled to great weight, and the court should never lightly substitute its judgment for that of the board.

## OFF-CAMPUS HOUSING

Dr. Ferguson personally owned and operated a dormitory that would house approximately 20 students, located off the Prairie View campus. It had been built for this purpose and had been so used in prior years. On August 23, 1967 he received a form notice from President Thomas which described the college's off-campus housing regulations. Dr. Ferguson submitted an application blank to qualify his premises for the 1967–68 school year. On September 21, 1967 Dr. Ferguson exchanged written communications with Dean of Men, Leroy Marion, in which Dr. Ferguson asked Dean Marion to check his house so that it could be made available for students, and Dean Marion advised Dr. Ferguson that he planned to call on him that same day, but he never did inspect Dr. Ferguson's premises. On September 26, Dr. Ferguson wrote President Thomas asking why his quarters had not been approved for off-campus housing. He received no reply. Dr. Ferguson tendered proof that students had been refused

2. Cf. McNeese v. Board of Education, 373 U.S. 668, 671, 672, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), § 1983 provides a remedy in federal courts supplementary to state court remedies.

admission to the college for the 1967–68 academic year because housing, both on and off the campus, had been exhausted. The record also indicated that Dr. Ferguson's premises had been the subject of four or five "severe" incidents involving fights, the presence of weapons and arrests by police officials, but the court refused to permit the full development of this issue by proof.

■ The only basis for the District Court's action in refusing to permit the development of evidence relative to approval of Dr. Ferguson's off-campus housing and for dismissing this portion of the complaint for lack of jurisdiction, was the failure to join the Dean of Men as a party defendant. Rule 19, Fed.R. Civ.P. provides that a person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action, shall be joined as a party in the action if his presence is necessary to complete relief. The rule further provides that if such a party has not been joined, the court shall order that he be made a party. No showing of impossibility of joinder was attempted. If Dean Marion as an individual was not subject to service of process by the court, then certainly, with the school located in the district, his successor was. Even after a determination that the absent person cannot be made a party the rule does not permit dismissal. The court must then determine whether in equity and good conscience the action should proceed among the parties before it or be dismissed, giving consideration to four factors: first, the extent to which a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Provident Tradesmens Bank &

Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). None of these factors were considered by the court below and the factual and legal situation is entirely different from that present in our decision in Broussard v. Columbia Gulf Transmission Company, 398 F.2d 885 (5th Cir. 1968), where dismissal was really just a form of transfer of the action to a more appropriate forum. Compare also Schutten v. Shell Oil Co., 421 F.2d 869 (5th Cir. 1970).

This cause must, therefore, be remanded for proper compliance with Rule 19 and, unless it proves impossible for some reason we cannot here foresee, a determination on the merits of Dr. Ferguson's claim that the failure to approve his off-campus housing for the 1967–68 term was a form of punishment imposed for the exercise of constitutional rights. The record contained a strong intimation that valid, non-discriminatory reasons did exist. If, after hearing, this proves to be true and it was the basis upon which the college acted, dismissal with prejudice could be proper. In any event, this remand is made without the slightest intimation as to how the issue should be resolved on the facts after they are developed.

Affirmed in part, reversed in part and remanded.

THORNBERRY, Circuit Judge (dissenting):

With deference, I dissent. The majority recognizes that the State of Texas could terminate Dr. Ferguson's employment only for cause and only after a hearing satisfying due process standards. Dixon v. Alabama State Board of Education, 5th Cir. 1961, 294 F.2d 150. Ordinarily, due process rights will not entitle terminated employees to a federal remedy, because due process defines a broad boundary within which the State has discretion to adopt the procedures it finds most appropriate. But this case is outside the boundary. In my judgment, the case should be reversed because the defendants never accorded

Dr. Ferguson a hearing satisfying even minimum standards of due process.

The hearing the majority approves took place against a background of severe administration disapproval of Dr. Ferguson's alignment with student causes and reluctance to recognize his procedural rights, circumstances that should have called for a particularly careful fact-finding hearing. Yet the hearing was a brief one, held before the Board of Directors of the University System as part of the agenda of a regular board meeting, and it took place *after* the College administration had already terminated Dr. Ferguson's employment. The record before the district court discloses that one of the main grounds for Dr. Ferguson's termination, his alleged incompetence, was never presented to the Board out of concern for Dr. Ferguson's welfare. In contrast to this procedure, the cases hold that discipline cannot be based upon reasons not presented to the tribunal or set out in the notice to the accused.[1] The hearing itself was simple: President Thomas stated the three reasons for discharge, and Dr. Ferguson was allowed to make extemporaneous reply. He was denied the right to present evidence, a right clearly accorded by the cases.[2] Most important of all, the Board refused to make any findings or decisions regarding material disputed facts. It merely informed Dr. Ferguson that "The Board of Directors considers this an administrative matter to be handled by President Thomas and President Rudder." The courts have indicated that colleges have a duty to furnish disciplinary tribunals that have at least the appearance of impartiality;[3] and it should be obvious that this duty cannot be fulfilled by a body that expressly abdicates its function to a person who has not heard the case.

The majority avails itself of testimony presented to the district court, but not received by the Board, to show that the hearing before the Board was adequate. I question the soundness of this approach. In the first place, the Board's refusal to hear these witnesses was so definite that it discouraged the calling of *any* witnesses and the presentation of an adequate defense. In the second place, the majority's approach ignores the duty of the State of Texas, as distinguished from the federal courts, to make an informed and impartial decision whether to terminate Dr. Ferguson's employment. The majority's holding reduces to the proposition that the Board was not required to afford Dr. Ferguson due process because Dr. Ferguson's case was weak.

In my view the college was required to afford Dr. Ferguson due process regardless of the merits of his case, and because of its failure to do so this Court should not sustain the termination of his employment.

## ON PETITION FOR REHEARING

### PER CURIAM:

It is ordered that the petition for rehearing filed by plaintiff-appellant in the above entitled and numbered cause be and the same is hereby denied.

It is ordered that the petition for rehearing filed by defendants-appellees in the above entitled and numbered cause be and the same is hereby denied without prejudice to the right of the parties to present to the court below such questions and issues as may arise if the Dean

---

1. *See* Wright, The Constitution on the Campus, 22 Vand.L.Rev. 1027, 1072 (1969); Hammond v. South Carolina State College, D.S.C.1967, 272 F.Supp. 947, 950; Woody v. Burns, Fla.App. 1966, 188 So.2d 56, 57.

2. *See, e. g.*, Dixon v. Alabama State Board of Education, 5th Cir. 1961, 294 F.2d 150, 159; Wright, *supra* note 3, at 1072 & n. 240.

3. *See* Pickering v. Board of Education, 1968, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 & n. 2; Esteban v. Central Missouri State College, W.D.Mo.1967, 277 F.Supp. 649, 651; French v. Bashful, 5th Cir. 1970, 425 F.2d 182 (dismissing appeal from injunction against disciplinary action); French v. Bashful, E.D.La.1969, 303 F.Supp. 1333.

**862**

of Men of Prairie View A & M College should plead the bar of any applicable statute of limitation to personal liability upon being joined as a defendant to this action on remand.

THORNBERRY, Circuit Judge:

I respectfully dissent to the Order denying the petition for rehearing filed by plaintiff-appellant and concur in the Order denying the petition for rehearing filed by defendants-appellees.