Robert P. SINDERMANN, for himself
and others similarly situated,
Plaintiff-Appellant,

v.

Charles R. PERRY et al., Defendants-
Appellees.

No. 28372.

United States Court of Appeals,
Fifth Circuit.

Aug. 10, 1970.

Rehearing Denied Sept. 9, 1970.

Warren Burnett, Odessa, Tex., Law Offices Burnett & Childs, Odessa, Tex., for plaintiff-appellant; by Richard J. Clarkson, Odessa, Tex., of counsel.

W. O. Shafer, Lucius D. Bunton, Raymond D. Wier, Shafer, Gilliland, Davis, Bunton & McCullom, Odessa, Tex., for appellees.

David Rubin, Deputy Gen. Counsel, National Education Association, Richard J. Medalie, Alvin Friedman, Epstein and Friedman, Washington, D. C., for the National Education Association.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The court below disposed of this case by summary judgment but because we find that this case presents issues of constitutional law, the longest way around now proves to be the shortest way through the thicket. The Board of Regents of Odessa Junior College voted not to renew the employment contract of Professor Robert P. Sindermann. Sindermann filed suit in the district court alleging that the action of the Regents in refusing to offer him a new term of employment was based solely on his exercise of First and Fourteenth Amendment rights of expression, association and petition and alleging violations of due process in connection with this refusal. Finding the contract rights of the parties clear, the court granted a motion of defendants for summary judgment. Shortly after the summary judgment was appealed, this court decided Pred v. Bd. of Public Instruction, 415 F.2d 851 (5th Cir. 1969), which classifies the rights of persons circumstanced such as plaintiff as constitutional rather than contractual. *Pred* aligned this court with the 4th Circuit [1] and against the 10th Circuit [2] in this as yet unresolved conflict between circuits. This new development in decisional law, coming as it did after the decision of the court below, renders that court's summary judgment inappropriate and erroneous. We reverse for further development of the facts.

BACKGROUND:

Professor Sindermann became a member of the Odessa College faculty in September 1965, after previous college teaching experience. By a succession of one-year contracts he remained a faculty member until the end of the 1968–69 school year. On May 19, 1969 the col-

1. Johnson v. Branch, 364 F.2d 177 (4th Cir. en banc, 1966), cert. denied 385 U.S. 1003, 87 S.Ct. 706, 17 L.Ed.2d 542 (1967).

2. Jones v. Hopper, 410 F.2d 1323 (10th Cir. en banc, 1969), cert. denied 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970).

lege president notified Sindermann that the Regents had voted to approve the president's recommendation not to renew his contract for 1969–70. Sixteen days later Sindermann filed the present action and contemporaneously with the instigation of litigation, requested that he be given a hearing by college authorities. Apparently no such hearing has been afforded.

During the 1969–70 school term no member of the Odessa College faculty had any formal assurance of continuation of employment beyond the present school term.[3]

Shortly before official notice of the decision not to renew plaintiff's contract, the college issued an 11-page press release documenting the deterioration of its relationship with plaintiff. The highlights are reflected in this chronology from that document. The validity of Professor Sindermann's work with Odessa College was recognized by his nomination to be co-chairman of the Social Science Department with an increase in pay. As soon as he became co-chairman, he began to circularize lengthy letters to the members of his department. This resulted in his being dropped as co-chairman in the Fall of 1968 but with no corresponding reduction in salary. In February 1969 Sindermann was elected president of the Texas Junior College Teachers Association.[4] Sindermann accepted this office without consultation with any administrative officer of Odessa College and immediately requested student clerical help, a reduction in

teaching load and time off during winter months to visit other junior colleges, which had not been true with former faculty members who served in this same office. Sindermann also aligned himself with a group known as "The Committee to Elevate Odessa College", a group seeking to raise Odessa College to a 4-year status—a move officially opposed by the Board of Regents. Plaintiff's name appeared as sponsoring a newspaper advertisement ridiculing the position taken by the Board of Regents on Odessa College's 4-year status.[5]

On at least four occasions Sindermann requested permission from college officials to absent himself from the campus and his teaching duties in order to testify before committees of the Texas legislature on a bill relating to academic freedom and tenure. These requests were each refused but Professor Sindermann nevertheless attended the committee hearings. The press release concluded by quoting a telegram from Sindermann to a Senator which, in part, stated: "I have been fired from Odessa College for attempting to testify on S.B. 512." It noted however that Sindermann had not been officially advised that his contract would not be renewed. The letter of "official" notification of non-renewal shortly followed the press release.

PLEADINGS AND PROCEEDINGS:

Sindermann's complaint alleged that his contract was not renewed in order to retaliate against him for expressions of opinion, that he was a competent class-

3. The official Faculty Guide published by the college contained the following paragraph:
"Teacher Tenure: Odessa College has no tenure system. The Administration of the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work."

4. The Faculty Guide indicated complete administration approval of this organization in the following language:

"Professional Membership: Odessa College faculty members pride themselves on one hundred percent membership each year in the Texas State Teachers Association and Texas Junior College Teachers Association."

5. Sindermann disclaimed any connection with the advertisement but the press release held that his "guilt by association" could not be rejected because he allied himself with the Committee to Elevate Odessa College.

room teacher, that he had not been offered an impartial hearing in connection with the non-renewal of his contract, that the action taken against him had a chilling effect on other professors at Odessa College, and that he had been damaged in his professional reputation and standing. He sought compensatory and punitive damages and attorneys fees, a declaratory judgment adjudicating that the Regents' action violated his constitutional rights and that he was entitled to a hearing under suggested procedural guidelines, and a mandatory injunction requiring his reinstatement for the 1969–70 college year at the same level of responsibility and function he had previously held. He named as defendants the members of the Board of Regents and the college president, individually and in their official capacity. The Board of Regents moved to dismiss the action insofar as they were sued in their official capacity. All defendants moved for summary judgment.

Only three affidavits were filed in the course of the pleadings. All were by the plaintiff, Sindermann. The first supported his motion for injunction, the second opposed summary judgment, the third verified the authenticity of the exhibits to his complaint. After denying the motion to dismiss,[6] the court granted defendants' motion for summary judgment on the basis of the findings and conclusions set out in the margin.[7]

SUMMARY JUDGMENT:

Pred v. Bd. of Public Instruction, supra, invalidates the basic legal premise of the Court's summary judgment. There we said:

"Equally unpersuasive is the related argument that since there is no constitutional right to public employment, school officials only allowed these teachers' contracts to expire, and thus they cannot be liable for a violation of any rights protected by § 1983. But in the posture of this case this misconceives the whole thrust of their claim. The right sought to be vindicated is not a contractual one, nor could it be since no *right* to reemployment existed. What is at stake is the vindication of constitutional rights— the right not to be punished by the State or to suffer retaliation at its hand because a public employee persists in the exercise of First Amendment rights." (415 F.2d at 856)

*See also* Orr v. Thorpe, 427 F.2d 1129 (5th Cir. 1970).

In a legally analogous situation, the Supreme Court has made it clear that even the broad discretion vested in a State government to fix municipal boundaries cannot be used as an instrument to circumvent constitutionally protected rights and that where constitutional wrongs are perpetrated in the guise of fixing city limits, the breadth of the legislative power being exercised provides no insulation from judicial correction. Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960).

The controlling effect of *Pred* is in nowise lessened by the circumstances in the case at bar that Sindermann re-

---

6. This action was correct. Harkless v. Sweeney Independent School District, 427 F.2d 319 (5th Cir. 1970).

7. *Findings:*
 "I. Plaintiff's tenure of employment ended May 31, 1969.
 "II. Odessa Junior College has no tenure system which fact was known to the Plaintiff at the time he entered into his original contract with the college.
 "III. After the termination of his contract of employment the Defendant college owed no obligation to the Plaintiff."

*Conclusions:*
 "I. Plaintiff has no cause of action against the Defendants since his contract of employment terminated May 31, 1969, and Odessa Junior College has not adopted the tenure system.
 "II. Plaintiff has no contract with the Defendant college.
 "III. Plaintiff has no right which would require Defendants to execute a contract with Plaintiff, or to employ Plaintiff.
 "IV. Defendants have not violated any constitutional rights of the Plaintiff."

quested permission to be absent from his teaching duties to exercise constitutional rights, that such permission was refused and that he deliberately disobeyed administrative directions. The inquiry still comes back to be whether the college refused to renew the teaching contract on an impermissible basis—as a reprisal for the exercise of constitutionally protected rights. We reject the sophistry which would recognize that the college could not withhold renewal of Sindermann's contract because of his association with the Committee to Elevate Odessa College or because of his exercise of a reasonable right to petition the legislature by attending committee hearings but, at the same time, recognize a right in the college administration to direct him not to exercise these rights then refuse to renew his contract for disobedience of their orders. *Compare* Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

 However, a valid distinction might be drawn between a dismissal on bare bones pleadings as was involved in *Pred,* and a disposition on summary judgment as in the case sub judice. This Court has affirmed the use of summary judgment to dispose of constitutional issues, Hawthorne v. United States, 115 F.2d 805 (5th Cir.1940), see also Dawkins v. Green, 285 F.Supp. 772 (N.D. Fla. 1968), but this form of disposition is often inappropriate in cases involving issues of far-flung import. *Compare* Hall v. Garson, 430 F.2d 430 (5th Cir. 1970) Part II B; Kennedy v. Silas Mason Co., 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948); and Dispatch, Inc. v. City of Erie, 364 F.2d 539 (3rd Cir. 1966). It was totally inappropriate in the case at bar, where the only affidavits on which summary judgment was based were submitted by the plaintiff and where there was a clear offer to prove facts constituting a constitutional claim. Whitaker v. Coleman, 115 F.2d 305 (5th Cir. 1940). Summary judgment should be granted only when the truth is clear, where the basic facts are undisputed and the parties are not in disagreement regarding material factual inferences that may be properly drawn from such facts. Cole v. Chevron Chemical Co., 427 F.2d 390 (5th Cir. 1970). While there was no dispute about the facts underlying Sindermann's contract status with Odessa College, the truth of his constitutional position was far from clear. The basic facts, as well as the material inferences to be drawn therefrom, were in total dispute. Summary judgment was improper. We explicitly note that we deal only with procedures and not with the merits. The remand for factual explication is made with no intimation whatsoever as to what outcome such further development should produce.

ACADEMIC HEARING PROCEDURES:

Since the case must be remanded, it is appropriate that we comment on plaintiff's contention that the college denied him procedural due process by simply announcing that he would not be rehired and failing or refusing to give him a hearing.

 Before specifying what procedural devices ought to be available to Professor Sindermann at the collegiate level, a determination must be made as to whether the teacher involved has tenure or an expectancy of reemployment under the policies and practices of the institution. *See* Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970) and Greene v. Howard University, 134 U.S.App.D.C. 81, 412 F.2d 1128 (1969). The factual development of the record in its present posture is too scanty for this court to decide whether this second alternative applies to Sindermann.[8] After the facts

8. The "Teacher Tenure" statement, supra n. 3, creates at least some doubt in this court's mind as to whether this institution might have failed in its apparent attempt to secure the best of both worlds

—attracting teachers who think they will be free from annual reemployment pressures, while at the same time retaining broad discretion to make or refuse a new contract each year. The Faculty Guide

are developed, if the trial court should conclude that Sindermann did have an expectancy of reemployment, then the applicable notice and hearing standards are now established in *Ferguson*.

On the other hand, if the court resolves that Sindermann did not have an expectancy of reemployment which would require the college to show cause for the decision not to renew his contract, a different procedure would be indicated. In such a situation, upon receipt of notice that a new contract will not be offered, the teacher must bear the burden both of initiating the proceedings and of proving that a wrong has been done by the collegiate action in not rehiring him. It is incumbent upon such a teacher, not the college, to shoulder these responsibilities because the college may base its decision not to reemploy a teacher without tenure or a contractual expectancy of reemployment upon any reason or upon no reason at all. Bomar v. Keyes, 162 F.2d 136 (2nd Cir. 1947). Cf. Smith v. Board of Regents, etc., 426 F.2d 492 (5th Cir. 1970). A requirement such as plaintiff suggests, that a college must always assign a cause for not renewing the contract of any teacher on its staff, would have the legal effect of improperly denying to colleges freedom of contract to employ personnel on a probationary basis or under annual contracts which are unfettered by any reemployment obligation. Every teacher would thus be granted substantial tenure rights by court edict. Courts do not make contracts for colleges or teachers any more than for any other litigants.

Upon receipt of the college's notice that it will not renew his contract, if a teacher determines to assert that such non-renewal is really a form of punishment for his exercise of constitutional rights or otherwise constitutes some actionable wrong, the teacher should notify the institution with reasonable promptness of his claim in sufficient detail to fairly enable the institution to show any error that may exist and request a hearing. Upon the receipt of this notice and request the institution should constitute a tribunal to conduct such a hearing that both possesses some academic expertise and has an apparent impartiality toward the charges.

This hearing must include the right to produce witnesses and evidence and the right to confront and cross-examine witnesses produced by the opposition.[9] Of course the whole point of the academic process is lost unless the hearing affords a meaningful opportunity to develop a record which can, if necessary, later form a substantial part of any court proceeding—a transcript which should demonstrate that the academic tribunal based its decision upon matters adduced before it. This is not so just to accommodate court procedures. More importantly, it is the process best calculated to reach a fair accord and to settle the problems which have arisen between the parties. After all, the candid settlement of differences that arise between men is the essence of civil justice for which we strive.

It has been indicated to this court that the college administration was served with this court's subpoena before it received any request for a hearing from Professor Sindermann. If this be correct, then he may have "jumped the gun" in filing the present litigation. School-constituted review bodies are the most appropriate forums for initially determining issues of this type, both for the convenience of the parties and in order to bring academic expertise to bear

also sets out "Criteria for Retention of Teaching Personnel" which add to the uncertainty.

9. In Mack v. Florida State Board of Dentistry, 430 F.2d 862 (5th Cir. 1970), we noted that while administrative hearings are not to be conducted with the formalities and strictures of a court trial, they should not be allowed to degenerate into an ungoverned confrontion. The virtues of having a presiding officer with legal training if the parties are represented by counsel, is equally apropos here.

in resolving the nice issues of administrative discipline, teacher competence and school policy, which so frequently must be balanced in reaching a proper determination.

Except in cases where the teacher or the institution refuses to follow these suggested procedures or the positions of the parties are such as to demonstrate that following such procedures would be a needless waste of time (a finding which the trial court may, on remand, deem appropriate in this case), a court whose jurisdiction is invoked ordinarily should stay its hand until the matter has been made ripe for court adjudication by allowing such procedures to function.[10] If at the conclusion of the academic processes the matter must still come before the court for review, the presentation there arrives buttressed with the record developed before the academic agency, which is entitled to great weight.

CONCLUSION:

This action was brought as a class action on behalf of Professor Sindermann and "on behalf of many of the Odessa Junior College faculty members too numerous to join herein, who have been intimidated and harassed by the Defendants, or their agents, for expressing their opinions, and on behalf of many Odessa Junior College faculty members too numerous to join herein, who have become fearful and reluctant to express their opinions because of the conduct of the Defendants as described herein." However, no party before this Court has raised the propriety or impropriety of the class action aspects of this suit under Rule 23, Fed.R.Civ.P. *See* C. Wright, Federal Courts, § 72, pp. 306–317 (2d ed. 1970); also Carpenter v. Davis, 424 F.2d 257 (5th Cir. 1970) and Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2nd Cir. 1968). We therefore make no adjudication whatever on this question.

The summary judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

10. See *Ferguson,* supra, and Stevenson v. Board of Education, etc., 426 F.2d 1154 (5th Cir. 1970).