John **PARKER**, Plaintiff,

v.

Ray **GRAVES**, Defendant.

Civ. A. No. 481.

United States District Court,
N. D. Florida.

April 5, 1972.

John Parker, pro se.

William C. O'Neal, Gainesville, Fla., for defendant.

## OPINION–ORDER

MIDDLEBROOKS, District Judge.

This is an action brought by plaintiff against his employer for wrongful discharge, wherein it is alleged that defendant's actions abridged plaintiff's First Amendment rights and caused him damage. Jurisdiction of the Court is invoked pursuant to Title 28, United States Code, Section 1343(3) and Title 42, United States Code, Section 1983. Testimony having been taken and evidence having been received in this cause and the Court having considered exhibits, affidavits, depositions and other pleadings on file, enters the following findings of fact and conclusions of law as required by Rule 52(a), Federal Rules of Civil Procedure.

## FINDINGS OF FACT

Plaintiff, a law student at the University of Florida, was at the time of the events described in the complaint serving as an assistant track coach at the University of Florida, hereinafter referred to as the university. In addition to his coaching duties plaintiff served as a resident dormitory advisor in the athletic dormitory and as a meal checker at the training table. Among plaintiff's duties in the dining hall was the inspection of athletes in the dining area to see that they were dressed and groomed properly. As dormitory advisor he was responsible for maintaining

order and discipline on his floor and seeing that the rules and regulations prescribing student conduct were adhered to at all times by the residents under his supervision. In consideration for these services, defendant as an arm of the university furnished plaintiff with room and board in the athletic dormitory along with a weekly salary of $30.00. This contract for hire was not reduced to writing but was made upon an oral understanding between the parties. The parties began performance thereunder in the fall of 1970.

■ Defendant is athletic director at the university and at the time of the events alleged in the complaint he was serving as director of the University of Florida Athletic Association. Among defendant's ultimate responsibilities were the hiring and discharging of employees of the university athletic association.

■ During the month of October 1970, several of the student athletes residing in Yon Hall, the university athletic dormitory, decided to ally themselves to bring about reform in certain rules and regulations of the athletic association governing the conduct and grooming habits of student athletes. It appears that this action was prompted in part by the removal of two student athletes from the varsity tennis team for alleged grooming violations.

■ Plaintiff, although perhaps not a "founding father" of this group of athletes, assisted the organizers during this formative period. When the group organizers decided to circulate the initial petition listing athletes' grievances it was plaintiff who typed the petition. From that time onward plaintiff served as an advisor to the group and undoubtedly because he was then enrolled in law school he was looked on by the group as their "legal spokesman" and as one of its leaders. This was evidenced later by plaintiff's election as an officer of the League of Florida Athletes.

Once the petition had been circulated an organizational meeting followed.

Plaintiff was among those who attempted to get athletes to enlist in this cause and to attend the meeting. At this meeting several athletes proposed a "strike" by all varsity athletes. Plaintiff suggested a less drastic measure which course of action was adopted by the group. This proposal was aimed at bridging the "communication gap" between coaches and athletes as to grooming preferences and mode of dress. Thus a meeting was arranged between the two factions to see if these differences could be settled.

■ After preliminary discussion with defendant and other varsity coaches proved fruitless, the organizers of this group of athletes decided to obtain a charter and to become an officially recognized on-campus organization. At this meeting officers were elected and plaintiff was among those chosen. Testimony reveals that plaintiff assisted in the drafting of the charter and its bylaws. This association of student athletes became known as the League of Florida Athletes.

■ These events were occurring at a time when the University of Florida football team was in the throes of a not too successful football season. On October 29, 1970, an article appeared in the student newspaper wherein plaintiff was interviewed and in this interview he recanted the ills of the athletic association and the changes he thought needed to be accomplished.

Shortly before this time plaintiff's immediate superior, whose duty it was to see that the checkers and dormitory advisors were performing properly and effectively enforcing rules and regulations, met with the assistant athletic director and recommended that plaintiff be discharged because he had been remiss in his duties. Specifically, plaintiff had allowed athletes access to the dining hall when their hair length and personal attire did not comport with the grooming and dress regulations. Further, there were incidents in the dormitory area supervised by plaintiff in

which the curfew was not enforced and the "study" or "quiet" hours were not being properly supervised. This recommendation was not followed but the assistant athletic director did meet with plaintiff on October 29, 1970, and advised him that his performance to date had fallen short of the expectations of his superiors.

On November 4, 1970, defendant along with other coaches was scheduled to address students in a "question-and-answer" discussion at the university. On that date there appeared in the student newspaper another article describing plaintiff's involvement in this movement for equal rights for athletes. In that same edition appeared an article authored by plaintiff and marked by a derisive prejudgment of the outcome of the meeting to be held that day between coaches and students.

Following this meeting with students defendant met with plaintiff on the same date and informed him of his discharge. At this meeting defendant informed plaintiff in the presence of Father Gannon that the basis of his dismissal was "disloyalty" to defendant and the athletic program as manifested by the articles appearing in the student newspaper. Thereafter, plaintiff sought administrative review of this action but his efforts to overturn defendant's decision proved unsuccessful.

Although defendant may have stated at this meeting "disloyalty" as the basis for discharge, it was his testimony at trial that the November 4, 1970, incident was the precipitating cause and that there were other cumulative incidents of misfeasance which prompted him to conclude that plaintiff's discharge was essential to orderly maintenance of athletic discipline and to the success of the overall athletic program.

Because of plaintiff's involvement in the league, defendant felt that there existed a conflict in his personal beliefs and the exercise of his duties and responsibilities. To defendant plaintiff could not be loyal to the program and carry out his expected duties and at the same time harbor his dislike of the defendant's policies.

As was previously stated, the fortunes of the university football team were not good. Team morale was at a low ebb. Harmony between coaches and players became suspect when many varsity football players signed the initial petition for reform at the time it was circulated. Tension among team members was heightened by these events. Players revealed to coaches that they felt the articles in the student newspaper pitted one player against another and that some players were represented as speaking for the entire team when in fact they did not. Although these differences of opinion did not manifest themselves in the form of physical disruption, there was sufficient "disruption" to the continuity of the football program in that coaches and players became concerned over what was happening and they could not focus their full efforts on regaining their winning ways.

At the same time the coaches were attempting to interview prospective recruits and to have them visit the university. The widespread publicity which the university received during this time as a result of the events described in the preceding paragraphs hampered the recruiting efforts of the coaching staff. Several parents of the prospective student athletes refused to allow these visits to the campus and informed the coaches that they would not be interested in having their sons attend the University of Florida.

The evidence discloses that the ultimate reason for plaintiff's discharge was that in light of the widespread knowledge of plaintiff's views towards the rules and regulations of the athletic association he could not in the course of enforcement of same receive the cooperation of the athletes who knew he was opposed to these rules and regulations and the manner of their enforcement. In short, it was evident that this conflict between plaintiff's moral convictions

and duty impeded his effectiveness as an employee of defendant and his employment was thus terminated.

## CONCLUSIONS OF LAW

■ This Court has jurisdiction over the subject matter of and the parties to this action. Title 28, United States Code, Section 1343(3); Title 42, United States Code, Section 1983.

■ ■ Insofar as plaintiff attacks his dismissal on the basis that defendant denied him substantive due process, this allegation "unaccompanied by some more precise claim of *federal right* than a general claim of lack of due process" and grounded more on violation of state law will not find jurisdictional substance within the meaning of Title 28, United States Code, Section 1343(3). McDowell v. State of Texas et al., 5th Cir. 1971 [Slip No. 30363, May 6, 1971].

■ ■ Relative to plaintiff's assertion that he was deprived of procedural due process, the record before this Court is not supportive of this claim and this argument must fall. *McDowell*, supra; Sinderman v. Perry, 430 F.2d 939 (5th Cir. 1970). Furthermore, in conducting review *de novo* of this matter this Court has cured any deficiencies which may have existed in prior administrative proceedings. Fluker v. Alabama State Board of Education, 441 F. 2d 201 (5th Cir. 1971); Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970).

■ ■ In the main plaintiff spearheads his assault on defendant's action with a constitutional argument which may be summarized thusly: If plaintiff's First Amendment activities in any degree influenced defendant to terminate plaintiff as an employee, then the entire dismissal is permeated by an unconstitutional taint and plaintiff would be entitled to the relief demanded. This precise argument has been advanced before and rejected as an incorrect statement of the applicable law. The correct proposition of law is stated as follows:

" * * * The constitutionally protected right of a public schoolteacher to criticize the school administration and to comment on matters of public concern is a limited right, a right which must be balanced against the need for orderly school administration. Pickering v. Board of Ed. of Tp. H.S. Dist. 205, Ill., 391 U.S. 563, 569, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811 (1968). Whether the activities of the school employee are protected under the First Amendment depends upon a weighing of the asserted interests. Pred v. Board of Public Instruction of Dade County, Fla., 5 Cir., 1969, 415 F.2d 851, 857; Fluker v. Alabama State Board of Education, [supra]. * * *." Moore v. Winfield City Board of Education et al., 452 F.2d 726, 728 (5th Cir. 1971).

■ Upon review of the evidence adduced at the hearing and weighing the asserted interests of the parties in light thereof, there is substantial evidence showing that plaintiff's conduct created serious disciplinary problems and discord within the university athletic association which disrupted the orderly and efficient administration of the athletic department. Plaintiff's termination was brought about by an accumulation of incidents showing that plaintiff was disloyal to defendant and ineffective in the exercise of the authority and responsibilities vested in him under the terms and conditions of his employment. There has been no showing made that plaintiff's termination was motivated solely by the exercise of his constitutionally protected right of freedom of expression and therefore this Court cannot disturb the decision of defendant to terminate plaintiff's employment. Moore v. Winfield City Board of Education, supra.

The Court closes its recitation of conclusions of law with the following statement from Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 288 (1968), wherein it was said:

" * * * Courts do not and cannot intervene in the resolution of conflicts

which arise in the daily operation of school systems and which do not *directly* and *sharply* implicate basic constitutional values. \* \* \* (Emphasis supplied)." *Ibid.* at 104, 89 S.Ct. at 270.