Walter F. STEWART, Plaintiff,

v.

James C. BAILEY, Individually and as Director of the George C. Wallace Technical Community College, and Leroy Brown, Individually and as State Superintendent of Education, Defendants.

Civ. A. No. 75–G–317–NE.

United States District Court,
N. D. Alabama,
Northeastern Division.

May 30, 1975.

W. M. Dawson, Jr., and Edward Still, Birmingham, Ala., for plaintiff.

James R. Knight, Knight, Knight & Griffith, Cullman, Ala., for defendants.

## MEMORANDUM OPINION

GUIN, District Judge.

Plaintiff herein brings suit alleging violations of his first and 14th amendment rights, and further violations of his civil rights. He claims monetary damages pursuant to 42 U.S.C. § 1983, as well as injunctive relief.

### Statement of Case:

Plaintiff, William F. Stewart, was an instructor at the George C. Wallace Technical Community College, located in Cullman County, Alabama, from October 1, 1970, until March 22, 1974. Defendant James C. Bailey is director of the school and defendant Leroy Brown is the state superintendent of education.

On March 15, 1974, Mr. Bailey wrote Mr. Stewart a letter notifying him that he was being terminated as of March 22, 1974, for cause. Mr. Stewart was not a tenured professor. The letter set out several grounds for termination. It contained as well the following phrase: "This letter is to advise you in conformance with all due process in dismissing an instructor or teacher, . . . ."

Mr. Bailey testified that on several occasions, particularly February 20, 1974, and March 22, 1974, he advised Mr. Stewart that the school would provide him with a hearing concerning his dismissal. Mr. Stewart testified that at no time did Mr. Bailey ever discuss with him a hearing or apprise him of his due process rights.

It appears that during this period the George C. Wallace Technical Community College did not have an independent administrative dismissal appeal procedure. It is admitted that the supervision of the school was vested in the state board of education, Code of Ala. tit. 52, § 451(4) and § 509(96). In 1971 the board set up an informal ad hoc committee to hear dismissal appeals. However, this committee did not publicize its existence or availability. In August 1974 the state board of education did adopt an administrative appellate procedure to deal with teacher dis-

missal. At that time a memo outlining these procedures was circulated to all state institutions. Mr. Bailey testified that in March 1974 there were no appellate procedures that he knew of, and Mr. Stewart testified that he was not aware of any informal ad hoc committee.

On March 22, 1974, Mr. Stewart presented a letter of resignation to Mr. Bailey. The letter requested termination effective April 5, 1974. Mr. Stewart testified that he wrote the letter of resignation upon Mr. Bailey's promise that he would receive a favorable job reference. While March 22, 1974, was his last teaching day, Mr. Stewart was in fact paid until April 5, 1974.

### Issue Presented:

The rudimental issue before the court is whether the procedures followed in effecting plaintiff's termination denied him due process of law. However, the initial and determinative question is whether Mr. Stewart knowingly and intelligently waived his right to any administrative appellate procedure by his resignation of March 22, 1974.

### Conclusion:

After a finding of the facts discussed hereafter, the court concludes that Mr. Stewart was made aware of the opportunity for an administrative hearing concerning his dismissal; that he with knowledge of that right decided that he did not want a hearing but would rather resign than subject himself to an airing of the charges against him.

The court further finds that the George C. Wallace Technical Community College, through its director, Mr. James Bailey, did substantially comply with the due process requirements outlined in Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970), and the plaintiff effectively waived his right to be heard and present a defense to his dismissal.

### Findings:

In Ferguson v. Thomas, supra, the Fifth Circuit determined that nontenured teachers who had an "expectancy of

reemployment" were entitled to the same minimum standards of due process in any termination as had been recognized for students in disciplinary suspensions. The professor in that case was terminated for cause, and the reasons therefor stated in a letter to him. The professor challenged the validity of the hearing provided to him. The court found that the defendants' treatment of the plaintiff had created an expectancy of reemployment that required his termination to be accomplished under procedures that would accord the fundamentals of due process. It then outlined four requirements necessary to minimal due process:

> . . . that:
>
> (a) he be advised of the cause or causes for his termination in sufficient detail to fairly enable him to show any error that may exist,
>
> (b) he be advised of the names and the nature of the testimony of witnesses against him,
>
> (c) at a reasonable time after such advice he must be accorded a meaningful opportunity to be heard in his own defense,
>
> (d) that hearing should be before a tribunal that both possesses some academic expertise and has an apparent impartiality toward the charges. . . . *Supra,* p. 856.

It is of interest to this case that the court prefaced the requirements with this statement: "Within the matrix of the particular circumstances present when a teacher who is to be terminated for cause *opposes* his termination, . . . ." [Emphasis supplied.] *Supra,* p. 856. Evidently, it was elemental to the court that some opposition to the termination be forthcoming from the teacher before the due process requirements were necessary. In the case *sub judice* there is some question as to whether the plaintiff ever opposed his termination.

It is admitted that the first two requirements set out in *Ferguson* were met by the defendants. The third requirement is that within a reasonable time after notification of termination the teacher must be accorded a meaningful opportunity to be heard, and the fourth requires the hearing before an impartial tribunal. Assuming that plaintiff's actions were such as to notify the defendants that he was opposing the termination, the question still remains whether he was *accorded* a meaningful opportunity to be heard.

*Factual Evidence:*

The court has heard the oral testimony of the two principals, Mr. Stewart and Mr. Bailey. It has before it also several memoranda reportedly made by Mr. Bailey as a record of his conversations with Mr. Stewart. Those memos indicate that: (1) on February 20, 1974, Mr. Bailey discussed with Mr. Stewart his dissatisfaction with Mr. Stewart's attitude toward him and the school; (2) at that meeting he told Mr. Stewart he wanted him to have all "due process available to him," and offered a hearing to Mr. Stewart before "unbiased individuals"; (3) on March 22, 1974, after Mr. Stewart had received his termination letter outlining the causes for dismissal, Mr. Stewart came to Mr. Bailey and said he wanted to resign. Mr. Stewart at that time purportedly stated that he did not want a hearing and requested that Mr. Bailey burn the information he had against him.

All memoranda except the one dated March 22, 1974, are typewritten. There is some question in the record concerning the validity of the typewritten pages. However, the handwritten page has every appearance of credibility, and the court is inclined to place weight upon it as corroboration of Mr. Bailey's testimony. Considering the testimony, as reinforced by the March 22 memorandum and the resignation letter of that same date, two inferences which the court deems conclusive can be drawn. First, Mr. Stewart did not intend to oppose the termination, probably because the information against him would have indicated good

cause for dismissal. Second, Mr. Stewart, knowingly and intelligently, waived his right to a hearing, probably upon the assumption that should he resign and make amends with the school he could receive a reference and find another job. The evidence indicates that the school in fact accepted his resignation and paid him until April 5, 1974, the day he asked to be terminated.

■ Therefore, the court finds as a matter of fact, that Mr. Bailey and George C. Wallace Technical Community College provided Mr. Stewart with the minimal requirements of due process for the dismissal of a nontenured professor in accordance with the standards outlined in *Ferguson v. Thomas*. By letter of March 15, 1974, the defendants advised plaintiff of the causes for his termination and the names and nature of the testimony against him. By oral conversation on February 20, 1974, and March 22, 1974, defendants advised plaintiff of his opportunity to be heard in his own defense. By his reply on March 22, 1974, in his letter of resignation, plaintiff waived his right to such a hearing. The school accepted his resignation and terminated him as he requested. The court further finds that the school, having offered to have a hearing for Mr. Stewart, had "accorded him a meaningful opportunity to be heard."

Upon this basis the court rules that the defendants are entitled to a judgment as a matter of law and such judgment is entered along with the denial of injunctive relief, as allowed by Rule 65(a), Federal Rules of Civil Procedure.

The court does not intend to burden the record with a discussion of law not essential to its determinations. However, throughout the court's consideration of this matter, a pertinent question continuously presented itself. In such a situation as this, upon which party rests the burden of initiating the due process hearing? Because of the conflict in testimony as to whether a hearing was offered the plaintiff, it became pertinent as to whether the defendants were under a duty to make a hearing available without a formal request by the plaintiff.

The courts of appeal and the Supreme Court have had occasion to speak to a nontenured teacher's rights most often in cases dealing with failure by a school to rehire a teacher, rather than upon dismissal. In those cases dealing with failure to rehire, the courts have concerned themselves with whether the plaintiff did or did not have a "property right" entitled to the due process protection of the 14th amendment.

The Fifth Circuit has determined that a nontenured professor can have such an expectancy of reemployment that a constitutionally protected "property right" is created. *Ferguson v. Thomas, supra; Sindermann v. Perry*, 430 F.2d 939 (5 Cir. 1970). However, the Supreme Court upon review of *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), declared that a mere subjective expectancy of reemployment is not protected by procedural due process, but required instead a positive showing of a de facto type tenure policy which while allowed to some was not allowed to plaintiff. In such a situation the plaintiff may invoke the right to a hearing by proof that such a de facto tenure system existed. Therefore, the burden of initiating the hearing would primarily be on the professor.

On the same day the Supreme Court decided another landmark decision in this field. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), it was held that unless it can be shown that the nonrenewal of a nontenured teacher's contract deprived the teacher of an interest in "liberty" or that he had a "property interest" in continued employment, the 14th amendment does not require a due process hearing before nonrenewal. Of course, the theory behind such a rule is the same as the basis for the Fifth Circuit's "expectancy" concept. Without a constitutionally protected right no due process procedure is required. If plaintiff

desires due process he must assert a due process right and a constitutionally impermissible infringement on that right. He must request that he have the opportunity to be heard before that alleged right is violated. *Orr v. Trinter,* 444 F.2d 128 (6th Cir. 1971).

A reading of the *Sindermann* and *Roth* decisions concertedly indicates that without a formal contract or tenure right a professor is not entitled to due process appellate procedures as a matter of right. He must attack the termination as based on some impermissible reason and request a full hearing at which he could challenge the grounds for dismissal. The burden rests on the professor.

However, the *Roth* decision indicates that there is one set of circumstances where a due process procedure must be offered a professor. Where the college, in dismissing a professor or in declining to rehire one, does so for cause, the college may be required to initiate the hearing. When the college states its causes and thereby makes any charge against the professor that might seriously damage his standing in the community, it has effectively violated a constitutionally protected right. The Court stated:

> "[w]here a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." [Cites omitted.] In such a case, due process would *accord* an opportunity to refute the charge before University officials. . . . [Emphasis supplied.] *Supra,* 408 U.S. p. 573, 92 S.Ct. p. 2707, 33 L.Ed.2d p. 558.

The inherent right to protection of one's "good name, reputation, honor or integrity," combined with the possible adverse effect on future employment caused by the charges, requires an opportunity to challenge the charges. The university must offer such a hearing to a professor dismissed for cause. This is in essence the rule of the *Ferguson* case, wherein it recognizes that a termination for cause presupposes the right to notice and a hearing. Under such circumstances the college must initiate the appellate procedure and hearing.

This is not to say that the school must set up a hearing or committee and wait to see if the professor appears. However, they must offer him the opportunity to be heard as soon as they notify him of his termination. Even in such a situation, according to *Fluker v. Alabama State Board of Education,* 441 F.2d 201 (5th Cir. 1971):

> . . . The law in this Circuit is crystal clear that a non-tenured teacher alleging that he has been dismissed for constitutionally impermissible reasons "must bear the burden . . . of proving that a wrong has been done by the collegiate action in not rehiring him." [Cite omitted.] *Supra,* p. 205.

In summary, when a nontenured professor is dismissed or not rehired for cause, and the stated causes attack his good name, reputation or integrity so as to possibly deprive him of future state employment, the college has the burden of initiating a hearing where the teacher may challenge the stated causes. But, where there is dismissal without cause, no cause is stated, or the causes cannot be said to offend the teacher's reputation, the initiative is upon the teacher to assert that the cause for dismissal is for a constitutionally impermissible reason and request a hearing.

The court concludes that upon these facts, the causes for dismissal outlined in the March 15, 1974, letter from Bailey to Stewart did so attack the reputation of the plaintiff that the college had the initial burden of offering plaintiff a hearing. The court further finds that, since plaintiff actually had a formal contract at the time of his dismissal, he possessed a property right of such a nature as to require defendants to actually show cause for dismissal and carry the burden of proof in any such hearing.

However, the court further finds that the plaintiff effectively waived his right to such a hearing and is therefore not entitled to the relief he requests.

Accordingly, it is ordered that judgment for the defendants be entered.