Ralph **BATES**, Jr., Plaintiff,

v.

J. S. **HINDS** et al., Defendants.

Civ. A. No. 2–831.

United States District Court,
N. D. Texas,
Amarillo Division.

Nov. 9, 1971.

Larry Watts, John Abbott, Houston, Tex., for plaintiff.

Robert Gibbins, Jr., Austin, Tex., Lucian Morehead, Plainview, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

ROBERT M. HILL, District Judge.

Plaintiff Ralph Bates, formerly employed by the Silverton, Texas, Independent School District as an English teacher, brings this suit challenging the validity of his discharge. Jurisdiction is predicated on 42 U.S.C. § 1983.

### The Hiring and Firing

Plaintiff received his B.S. degree in speech and English from West Texas State University, Canyon, Texas, in August of 1968.

During the summer of 1969, Bates began looking for a position as a teacher. One of the schools he contacted in this

regard was the Silverton Independent School District. During the month of July, Bates interviewed with Mr. O. C. Rampley, Principal of the Silverton High School, and with Mr. J. S. Hinds, Superintendent of the District. At this interview Bates was requested to complete an application for a teaching position, and he did so. Bates made no misrepresentations on the application.

Bates signed a contract dated July 20, 1969, as an emergency, uncertified teacher for the Silverton Independent School District for the 1969–70 academic year. There had been no independent inquiry into Bates' character by any agent of the District prior to the signing of this contract. Nor was Bates given any guidelines on what materials to teach in his classes at any time.

Soon after the contract was signed, Rampley and Hinds began hearing rumors that Bates was a member of Students for a Democratic Society and was involved in drug use. On August 19, 1969, Mr. Rampley called Dean Page Caruth of West Texas State, and inquired about Bates' character. Dean Caruth gave a negative opinion of Bates.

On August 25, 1969, the day school began, Principal Rampley called Bates into his office before class. Rampley and Mr. Pat Northcutt, President of the Board of Trustees of the District, questioned Bates about his association with the SDS and his use of drugs. Bates stated that he had corresponded with Bartee Haile of the SDS, and had at one time requested permission to establish an SDS Chapter at West Texas State. Dean Caruth had denied the request, and plaintiff had pressed the matter no further. Bates said that he had never joined the SDS and had since disassociated himself from it. He denied use of drugs. At the end of the interview,

Bates was permitted to assume his teaching duties.

On August 28, Bates conducted a dramatic reading of Albee's "The Zoo Story" in his 12th grade English class. Shortly thereafter, Rampley summoned Bates to his office. Rampley told Bates he had received complaints resulting from the reading of "The Zoo Story." Bates expressed his desire to cooperate with the school and indicated he would attempt to avoid using controversial material.

On September 7 Bates reviewed the movie version of Herlihy's "The Midnight Cowboy" for his 9th and 10th grade English classes. Soon afterward, Rampley notified Bates that Superintendent Hinds wished to see him. The three men met in Hinds' office, where Rampley and Hinds expressed displeasure with Bates' choice of literary material. They stated that they had received complaints from parents and that they thought that work unsuitable for class.[1] Bates again expressed his desire to comply with their wishes.

Shortly thereafter, Laura Arnold, a student in one of Bates' 9th grade English classes, requested and received permission to read and report on Hemingway's "For Whom the Bell Tolls." On September 18, Arnold gave a brief oral report, and Bates asked several questions of the student. Arnold appeared embarrassed and upset by Bates' questions.[2]

On September 19, Bates was called into Hinds' office before class. Bates, Hinds, Rampley and Mr. Arnold, Laura's father, were present. Mr. Arnold seemed extremely upset by the choice of the book and the book report made by Laura Arnold. Hinds advised Bates to resign at that time, but Bates refused to do so.

---

1. Testimony at trial revealed that Mr. Rampley had taken a group of Silverton High School students to the movie version of "The Midnight Cowboy" in Austin that year.

2. The evidence indicates that Laura Arnold failed to read "For Whom the Bell Tolls." The testimony at trial revealed that her oral report was brief and uninformative. In addition, her written report on the book was only three sentences long.

On September 21, a Sunday, at approximately 1:00 p. m., Hinds called Bates at his home. He informed Bates that the Board of Trustees had scheduled a special meeting concerning Bates at 5:00 p. m. that evening. Plaintiff was told to be present at the meeting, but was given no notice of any specific charges against him.

Plaintiff appeared as requested at 5:00 p. m. He found the meeting in progress and was requested to remain in the hall. While Bates was in the hall, parents made complaints to the Board concerning Bates' teaching methods and choice of material. After a period of time, Bates was admitted to the meeting. He was generally informed of the complaints against him and was permitted to speak in his defense. After speaking for about 15 minutes, plaintiff was asked to leave the room while the Board determined whether to retain or terminate Bates. Bates was recalled after the vote and informed the Board had voted unanimously to ask for his resignation. Bates refused to resign, however, and the meeting was adjourned.

During the next week, plaintiff contacted Rampley, Hinds, and Pat Northcutt several times, by both mail and telephone. In the initial contacts, plaintiff requested a full hearing before the Board of Trustees. Later he requested notification of the Board's decision to grant him a hearing or to terminate him. He received no answer until September 30, when Hinds requested the return of Bates' Daily Class Record Book. Plaintiff has never received official word of his termination.

In this suit plaintiff alleges, first, that his First Amendment rights have been violated by his discharge; and second, that his right to due process under the Fourteenth Amendment was denied by the Board's failure to provide a sufficient hearing. He has waived his claim to damages and requests reinstatement and back pay. Trial was before the Court. Harkless v. Sweeney Independent School District, 427 F.2d 319 (5th Cir. 1970).

### Procedural Due Process

Plaintiff must prevail on two issues for the Court to hold that he was denied procedural due process. First, the Court must find that plaintiff was entitled to a hearing. Second, if Bates was entitled to a hearing, the Court must find that the hearing granted him lacked the minimum requirements of procedural due process.

### 1. The Necessity of a Hearing

██ Not every discharged teacher is entitled to a hearing. The Fifth Circuit requires school boards to provide notice and hearing before dismissing public school teachers in two instances. Thaw v. Board of Public Instruction of Dade County, Fla., 432 F.2d 98 (5th Cir. 1970). First, a teacher with "tenure" or a reasonable expectation of reemployment is entitled to a hearing regardless of the reason for dismissal. Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970). Second, a teacher without tenure or reasonable expectation of employment is entitled to a hearing if he asserts that his dismissal is due to constitutionally impermissible reasons. Pred v. Board of Public Instruction, 415 F.2d 851 (5th Cir. 1969).

██ Bates was licensed as an emergency, uncertified teacher for one year. Because of the nature of his contract, and the fact that he was a first-year teacher, the Court holds that Bates lacked a reasonable expectation of reemployment at the end of the school year. However, Bates had signed a contract for the 1969–70 school year, and he certainly had an expectation that his employment would continue throughout that year. The Court feels that a nontenured teacher threatened with termination during his contractual term has the same right to hearing as a tenured teacher threatened with nonrenewal of his contract. The Court holds that Bates was entitled to a hearing under

the *Ferguson* rationale, and does not pass on Bates' right to a *Pred*-type Constitutional hearing.

### 2. *The Sufficiency of the Hearing*

■ Numerous courts have grappled with the requisites of "procedural due process." In Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961), the Fifth Circuit delineated specific guidelines to be accorded to students charged with expulsion from a state university. Nine years later the Circuit adopted these guidelines for teachers. Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970). The Court held that minimum procedural due process requires that a teacher threatened with termination for cause:

(a) be advised of the cause or causes for his termination in sufficient detail to fairly enable him to show any error that may exist,

(b) be advised of the names and the nature of the testimony of witnesses against him,

(c) be accorded a meaningful opportunity to be heard in his own defense at a reasonable time after such advice,

(d) be accorded a hearing before a tribunal that both possesses some academic expertise and has an apparent impartiality toward the charges.

Further, the State of Texas has recently enacted a statute that provides an elaborate set of procedural rights for teachers charged with violation of the Texas Code of Ethics and Standard Practices. Vernon's Ann.Civ.St. art. 2891–104 (1969). The statute provides that all complaints must be in writing, and that a teacher is to be given at least 15 days notice before a hearing is conducted before the Teacher Professional Practices Commission. A teacher charged with violation of the Code has both the right to produce witnesses in his behalf and the right to counsel.

After this hearing the Teacher Professional Practices Commission recommends a course of action to the Commis-sioner of Education, who may conduct additional hearings. If the Commissioner rules against a teacher, he may appeal to the State Board of Education. In the case of an adverse ruling by the Board, trial de novo is granted in the district court. The Court feels that this recent enactment indicates a strong awareness of the due process rights of teachers in the State of Texas by the Texas legislature.

The Supreme Court has stressed a balancing test to determine whether procedural due process standards have been met. In Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), the Supreme Court held that due process is to be determined by balancing the precise nature of the government function involved and the private interest affected.

In Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S. Ct. 624, 95 L.Ed. 817 (1951), Justice Frankfurter spoke in terms of the "rudiments of fair play," and stated that consideration must be given to elements such as the private interest affected, the manner in which it was affected, the reasons for affecting it, the alternative procedures, the implicit powers of the agency acting, and the balance of the hurt complained of and the good accomplished.

The Court recognizes the duty of a school board to be concerned with both course content and the ethics of teachers employed by the district. On the other hand, teachers employed by the districts have valid interests in their reputations and employment records that must not be underestimated.

The teacher in this case, Bates, was not given written notice of the charges against him, and he was given only four hours notice of the hearing. He was not given a list of the witnesses against him, or the nature of their testimony, and, indeed, he was not even permitted to know who they were or listen to their testimony at the hearing itself. He was therefore forced to defend himself with-

out sufficient knowledge of the charges against him.

Further, there is a serious question in the Court's mind concerning the impartiality of the Board of Trustees. Several of the school board members testified that they based their decisions to vote against Bates on his alleged previous SDS activities and drug use, at least in part. The Board had ample opportunity to investigate Bates' character and prior activities before offering him a contract. Absent allegations by the Board of misrepresentation by Bates prior to the signing of the contract,[3] the Court feels that any decision concerning Bates should have rested solely on his activities after the contract was signed.

■ The discharge of a teacher is an extremely significant event. When a school board contemplates discharge of a teacher in the middle of the school year, the threatened teacher is entitled to a more formal hearing than was conducted here. The Court concludes that Bates' hearing satisfied neither the procedural due process standards set out by the Fifth Circuit nor the rudiments of fair play.

### The Remedy

■ Bates was hired as an emergency, uncertified teacher. The Court feels that he lacked an expectancy of reemployment and feels that reinstatement would be improper. Bates is entitled to that portion of his wages for the 1969–70 year that has not been paid him.

■ Counsel for plaintiff request approximately $12,000.00 attorney's fees. Though recognizing counsel have taken much time and effort with this case, the Court feels that attorney's fees must bear some relation to the amount in controversy. The Court awards attorney's fees of $5,000.00.

Counsel for plaintiff is directed to prepare an order in accordance with this opinion.

3. There have been no allegations that Bates made any misrepresentations to any agent of the Board.