Melba LOWRANCE, Plaintiff,

v.

Charles BARKER, Individually and in his Official Capacity as Principal of Cleveland High School, et al., Defendants.

Civ. A. No. 7004.

United States District Court, E. D. Texas, Beaumont Division.

Sept. 8, 1972.

Larry Watts, Houston, Tex., for plaintiff.

Richard G. Sedgeley, James S. Kelly, Knipp & Sedgeley, Houston, Tex., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### STATEMENT OF THE CASE

STEGER, District Judge.

Plaintiff, a public school teacher, certified by the State of Texas, brings this action seeking reinstatement to her former teaching position, back pay, and attorneys' fees. She contends that she was denied due process of law by the Cleveland Independent School District when it, through its legal representatives, refused to renew her one-year teaching contract.

This action is brought pursuant to the Civil Rights Act of 1871, Title 42 U.S.C., Section 1983, Title 28, U.S.C., Sections 1331, 1343(3) and 1343(4), based upon violation of rights secured by and arising under the Constitution and laws of the United States. Relief is also sought pursuant to the Federal Declaratory Judgment Act, Title 28, U.S.C., Sections 2201 and 2202.

The case having been tried by the Court without a jury, and having considered all the evidence related thereto, the Court hereby makes and enters its Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. Mrs. Melba Lowrance, Plaintiff, was employed by the Cleveland Independent School District, Cleveland, Texas, under a one-year contract as a teacher during the 1969–70 school year. Mrs. Lowrance was employed to teach English classes in the eleventh and twelfth grades of Cleveland High School.

2. At all times material to this cause of action, Mr. Charles Barker, Defendant, was principal of Cleveland High School, and Mr. Charles Zeigler, Defendant, was Superintendent of the Cleveland Independent School District.

3. Prior to April, 1970, the following people were members of the Board of Trustees of the Cleveland Independent School District: Hugh Wright, Waymon Foster, James Pillot, Bernard Lewis, William Barnett, David Rice and Guyler Hamblen. At the time of the meeting of the Board of Trustees on April 3, 1970, Hugh Wright, Waymon Foster, and James Pillot were replaced as members of the Board of Trustees by defendants, Stan Jones, Goendon Toler, Jr., and Bernest Mitchell.

4. From early in the fall semester of 1969, and throughout the school year, Mrs. Lowrance had difficulty in controlling her classes. Her teaching was characterized by her absenteeism and lateness in submitting lesson plans, reports and grades to her supervisors. Mrs. Lowrance's written reports and written communications were usually almost incomprehensible due to her lack of care and neatness. The Plaintiff was often observed during class periods asleep with her head on the desk while her class was noisy, unorganized, disruptive, and manifesting disorder with no organized program of teaching. There were times when Mrs. Lowrance would leave her classroom unattended and would be found smoking in the teacher's lounge. When Mrs. Lowrance was absent from her classes seldom did she leave instructions or lesson plans which her substitute could follow.

5. Throughout the 1969–70 school year Principal Barker and Assistant Principal Roberson had numerous informal interviews with Mrs. Lowrance, discussing her teaching problems and exhorting her to make an effort to solve the problems, and offering her assistance in this regard.

6. On separate occasions in January, 1970, both Mr. Roberson and Mr. Barker held separate formal conferences with Mrs. Lowrance, outlining and discussing her teaching problems with her.

7. On or about March 6, 1970, Mr. Barker had a formal conference in his office with Mrs. Melba Lowrance and informed Mrs. Lowrance that he would not be able to recommend her to the Board of Trustees of Cleveland Independent School District for a new contract for the 1970–1971 school year and presented her with a copy of a letter setting forth his reasons and discussed the various reasons with Mrs. Lowrance. This letter was addressed and presented to Mr. Zeigler, Superintendent of Schools for the Cleveland Independent School District.

8. The procedure followed in the Cleveland Independent School District when the administration felt that they could not recommend a teacher for a new contract was to first advise the teacher that a new contract would not be recommended for that teacher by the administration. The purpose of this no-

tice was to give the teacher an opportunity to request that said teacher's name not be presented to the Board of Trustees as a candidate for a new contract or that the said teacher's request that a new contract be considered by the Board of Trustees be made with full knowledge that the administration could not recommend such a contract be awarded.

9. At the meeting of the Board of Trustees of the Cleveland Independent School District on March 10, 1970, all the teachers in the High School of Cleveland were considered and determinations were made regarding which teachers would be offered new contracts for the ensuing year. Mrs. Melba Lowrance was not to be offered a new contract.

10. Mrs. Melba Lowrance was informed that Mr. Barker's decision not to recommend her for a contract for the 1970–1971 school year had been presented to the Board of Trustees on March 10, 1970, and the next day she was informed that she could have a hearing before the Board of Trustees if she so desired within a reasonable time, at which time the Board would consider its prior action of accepting the recommendation of Mr. Barker.

11. On March 10, 1970, a meeting was held by the Board of Trustees in executive session and consideration was given to the awarding of new contracts for all teachers in the Cleveland Independent School District. Members of the school administration were present and teachers were considered and determinations made regarding new contracts based upon the recommendations of the administration. At this executive session no teachers were present. This executive session of the school board meeting was held for the specific purpose of communicating recommendations of the various Principals and other administrative officials to the Board of Trustees with regard to the awarding of new teachers' contracts for the ensuing school year.

12. A meeting of the Board of Trustees of the Cleveland Independent School District for a hearing for Mrs. Melba Lowrance was set for April 3, 1970, and Mrs. Melba Lowrance was notified of said hearing on March 25, 1970.

13. The hearing was held on April 3, 1970, with Mr. Barker being present for examination and cross-examination as a witness, and Mr. Roberson was standing by, available to be called as a witness. School Superintendent Zeigler was present and assisted the Board of Trustees of the Cleveland Independent School District in the hearing. Mrs. Lowrance was present and was represented by a licensed attorney of her own choosing.

14. After discussing the situation with Mrs. Lowrance and hearing her statements, the Board confirmed its prior action in upholding the recommendation of the administration not to offer a new contract to Mrs. Melba Lowrance by making no motion to reconsider its prior action or to offer a new contract to Mrs. Lowrance. It was the practice of the Board of Trustees of the Cleveland Independent School District that when any prior action of the Board was reconsidered at a subsequent hearing, that if no motion was made to change the prior action taken, that the prior minute entry would stand as written.

15. On June 22, 1970, Mrs. Lowrance requested a second hearing before the Board of Trustees with regard to their failure to have offered her a teaching contract for the school year 1970–1971 and that on July 6, 1970, Superintendent Zeigler confirmed by letter to Mrs. Lowrance that inasmuch as she had previously been given a formal hearing on April 3, 1970, her request for a second hearing would be denied.

16. The Cleveland Independent School District is a small school district located in a rural county in East Texas and that much of the teaching process is left to the teachers employed by the school district to perform the teaching services. The Cleveland Independent School District operated in the same

manner and identical practice as other independent school districts in the area in which it was located, and provided all teachers with a text book, certain in-training service programs at the beginning of the school year, provided Department Heads for new teachers to meet with and confer with regarding presentation of curriculum, and faculty meetings. The Cleveland Independent School District did not provide a printed curriculum guide line or fixed method of teaching which all teachers were required to follow.

17. Principal Barker prepared an evaluation sheet on Mrs. Lowrance as well as on all teachers under his supervision. The rating form sheet used in the Cleveland Independent School District was only one tool used for evaluating the efficiency of a teacher in performing her work, and the evaluation of Plaintiff as a teacher in no way varied from the process of evaluation applied to other teachers in the school of which Mr. Barker was Principal.

18. The gravamen of the complaints regarding Plaintiff's teaching related to those basic factors that are necessary to effective teaching regardless of the methodology used in teaching which are:

(a) Maintaining rapport with the student by being active and attentive in the classroom.

(b) Maintaining a reasonable amount of attendance in the classroom thereby establishing continuity in presentation of subject matter.

(c) Punctually delivering lesson plans to superiors in accordance with the directives of the school.

(d) Preparing lesson plans that are coherent, comprehensible and legible.

(e) Punctually delivering grades to superiors.

(f) Using a grading system established by the policy of the school.

(g) Cooperating with superiors regarding absenteeism in giving notice to superiors and in maintaining comprehensible and coherent lesson plans that could be used by substitute teacher.

(h) Maintaining appropriate discipline in the classroom.

19. That the executive session of the Board of Trustees on March 10, 1970, was the preliminary step in the process of not recommending a prospective teacher for a new contract. That thereafter the teacher was notified of the recommendation and was given an opportunity to have a formal hearing regarding the recommendation with the right to legal counsel and the right to call witnesses at such hearing.

20. That Mr. Zeigler, the Superintendent, at the hearing of April 3, 1970, read and explained to Plaintiff and the Board of Trustees the "nine reasons" given by the Principal, Mr. Barker, for not recommending the Plaintiff for a teaching contract.

21. That Mr. Barker and the Plaintiff had no personality problems and Mr. Barker's recommendation regarding a contract for Plaintiff was that of a professional made after extensive observation, counseling and reasoned analysis and was not arbitrary or capricious.

22. That Mr. Barker and Mr. Roberson are not, and were not at the time of the trial of this case, employed by the defendants.

## CONCLUSIONS OF LAW

1. Plaintiff's right of procedural due process was granted to her in the procedure followed by Defendants. The procedure adopted by the Cleveland Independent School District in the matter of offering or not offering a new contract to prospective teachers was adhered to in Melba Lowrance's case. The step by step process followed by the Cleveland Independent School District in determining whether to offer Plaintiff herein a new contract for the 1970–1971 school year was as follows:

(a) Leading up to the month of January, 1970, Mr. Roberson, Assistant Principal and Mr. Barker, Principal, of the

Cleveland High School had a number of informal conferences with the Plaintiff herein, Mrs. Melba Lowrance, in which they pointed out the problems that Mrs. Lowrance was having, discussed them with her and they suggested repeatedly to her that she make an effort to solve these problems.

(b) In January, 1970, Mr. Roberson, the said Assistant Principal, had a formal conference in his office with Mrs. Lowrance and outlined her teaching problems to her and discussed same with her in detail. Mr. Roberson admonished Mrs. Lowrance to face these problems and make an effort to solve them. Mr. Barker in January, 1970 also had a formal conference in his office with Mrs. Lowrance, discussed her teaching problems with her and also admonished her to take steps to solve these problems and offered his cooperation and assistance in this regard.

(c) Mr. Barker, on or before March 10, 1970, had another formal conference in his office with Mrs. Lowrance and informed her that he would not be able to recommend her to the Board of Trustees of the Cleveland Independent School District for a new contract for the year 1970–1971. At this meeting he presented her with a letter that set out the various reasons why he could not recommend her to the Board for a contract for said school year. Mr. Barker then proceeded to discuss these reasons with Mrs. Lowrance in his office.

(d) On March 10, 1970, Mr. Barker with the Superintendent of the Cleveland Independent School District met with the Board of Trustees of said district and all the contracts of all the teachers at that time were reviewed in light of the recommendations of the Superintendent and the Principal, Mr. Barker. Such recommendations were accepted by the Board of Trustees, subject to hearings requested by the teachers, at which time teachers could present their case to the Board.

(e) This meeting of the administration officials with the Board of Trustees on March 10, 1970, to consider contracts of the teachers for the ensuing year was a means of indicating or making known that a contract would not be offered for a particular teacher or that termination for cause was in the offing. In regard to offering Melba Lowrance a new contract, Mr. Barker only offered his letter setting forth his reasons for no recommendation and stated he could not recommend her at this meeting of March 10, 1970.

(f) Mrs. Lowrance was informed that this decision of no recommendation regarding her contract had been presented to the Board of Trustees the next day after said meeting and was informed that she could have hearing before the Board of Trustees if she so desired within a reasonable time, at which time the Board would consider its prior tentative acceptance of the recommendation of Mr. Barker.

(g) A meeting of the Board of Trustees of the Cleveland Independent School District for a hearing for Mrs. Melba Lowrance was set for April 3, 1970, at the request of Mrs. Lowrance. Mrs. Lowrance was notified of said hearing on March 25, 1970.

(h) A hearing for Mrs. Lowrance's benefit was held on April 3, 1970. Mr. Barker was present for questioning on cross-examination as a witness and Mr. Roberson, the Assistant Principal, was standing by to be examined as a witness also. These were the only two officials who did, or were authorized to, make or assist in making recommendation regarding the offering of a new contract to Mrs. Lowrance. They were also the only witnesses to be called as they alone personally made all investigations, observations and recommendations regarding Mrs. Lowrance. Mr. Zeigler, Superintendent of the Cleveland Independent School District was present at the hearing of April 3, 1970. Mrs. Lowrance was also present at said April 3rd hearing and was represented at said hearing by a licensed attorney of her own choosing. Mrs. Lowrance and her attorney

were in attendance at said hearing from the beginning to the end.

(i) At this hearing of April 3rd, the reasons for not offering Mrs. Melba Lowrance a new contract for the ensuing year 1970–1971, which had previously been presented on March 10, 1970, by Mr. Barker, the Principal, were read to her by Mr. Zeigler, the Superintendent. Mr. Zeigler then proceeded to discuss each item with Mrs. Lowrance and the Board of Trustees.

(j) The presiding officer, at the April 3, 1970, hearing, one of the trustees, informed Mrs. Lowrance that the meeting was hers and that she could proceed in any manner she wished. That Mr. Barker was present at said hearing for cross-examination and Mr. Roberson, the other administrative official, was standing by also available for cross-examination. The meeting of April 3, 1970, was conducted for a period of 45 minutes to an hour and was concluded at the request of the said attorney representing Mrs. Lowrance. At the conclusion of the hearing afforded Mrs. Lowrance no motion was made by any member of the Board of Trustees to alter or reject the prior action taken by the Board of Trustees on March 10, 1970, and therefore the prior action taken by the Board of Trustees remained in effect. The Cleveland Independent School District at said hearing on April 3, 1970, was not represented by legal counsel.

(k) The Board of Trustees elected not to reject or alter the previous minute entry and decided that the prior action as taken would stand and would represent the decision and order of the Board of Trustees.

■ 2. Subsequent to this hearing of April 3, 1970, Mrs. Melba Lowrance was informed by mail by Mr. Zeigler that she would not be offered a teaching contract for the ensuing year. The foregoing procedure granted Mrs. Lowrance due process in that:

(a) She was advised of the cause or causes for the school board's refusal to offer her a contract in sufficient detail to fairly enable her to show any error that may exist.

(b) She was advised of the names of witnesses (Mr. Barker and Mr. Roberson) and nature of the testimony against her.

(c) She was accorded a meaningful opportunity to be heard in her defense a reasonable time after such advice of the presentation of such causes.

(d) She was afforded a hearing prior to any final action on her contract before a tribunal that had possessed some academic expertise and which had an apparent impartiality toward the charges.

Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970), Bates v. Hinds et al., 334 F. Supp. 528 (N.D.Tex.1971), Sindermann v. Perry, 430 F.2d 939 (5th Cir. 1970).

■ 3. Plaintiff was granted substantive due process in that the decision not to offer Plaintiff a contract was not based on arbitrary or capricious reasons. Plaintiff's right to substantive due process was not violated in that she was granted a full and complete hearing regarding the offering of a new contract to her on April 3, 1970, before the Board of Trustees. A meeting of the Board of Trustees on March 10, 1970, held in executive session constituted the first step in the process of awarding teachers' contracts for the school year 1970–1971. The purpose of this executive session was to consider recommendations for the awarding of new contracts by the school administration. The Board of Trustees had delegated to the administrators the responsibility of notifying any teacher, and in this particular case, Melba Lowrance, of this initial step taken by the Board of Trustees. Melba Lowrance was so notified to enable her to request and obtain a hearing before the Board of Trustees at some subsequent date for reconsideration of the action taken by the Board of Trustees in not awarding her a new contract for the school year 1970–1971.

Mrs. Lowrance was notified that the purpose of this subsequent hearing would be to give her an opportunity to appear in person before the Board of Trustees and to be represented by counsel so that she could present to the Board of Trustees any reasons why she felt the Board of Trustees should reconsider its prior action. Mrs. Lowrance was advised that she could have anyone present she desired to testify in her behalf and that the school administration would be present in support of their recommendation to the Board of Trustees. That the Defendants' actions in this case regarding the offering of a contract to the Plaintiff met the standards as set forth in the above cited *Sindermann* and *Ferguson* cases as they relate to substantive due process.

4. The Defendants, though untrained in conducting quasi-judicial hearings, in substance and in essence complied with the requisites of the above cited cases in the matter of notice to Plaintiff, in granting the Plaintiff a hearing, and in the ancillary matters and preliminary procedure leading to said open hearing.

5. Defendants were not arbitrary or capricious in their decision not to offer Plaintiff a new teaching contract for the 1970–1971 and 1971–1972 school years, but acted with good cause in not making such recommendation. All of the cases regarding substantive due process cited by Plaintiff herein present fact situations wherein the refusal to offer a new contract is brought about by the attitudes and actions of the employer school district which is in opposition to the assertion or claim of the employee teacher's constitutional rights by such employee. These cases hold in essence that the school district cannot terminate employment of a school teacher simply on the basis that she is asserting or claiming her constitutional rights in society or in the court, where such assertion or claim does not materially disrupt or interfere with the teaching process. The cases cited by the Plaintiff herein which related to substantive due process in no manner can be applied to the facts in the instant case before the Court. The facts of this case before the Court clearly illustrate that the refusal to offer a contract to the Plaintiff herein was not an action of the school board that was designed to proscribe or interdict the Plaintiff in exercising any of her constitutional rights.

6. Plaintiff has not been denied constitutional due process and all relief prayed for by Plaintiff is, in all things, hereby denied.

Judgment shall be entered accordingly.