**Eda Fay GRUBBS**

v.

**WHITE SETTLEMENT INDEPENDENT SCHOOL DISTRICT et al.**

**Civ. A. No. CA 4-2187.**

United States District Court,
N. D. Texas,
Fort Worth Division.

Feb. 20, 1975.

———◆———

Dauphin Whitehead, Arlington, Tex., for plaintiff.

Cecil A. Morgan, David B. Owen, Fort Worth, Tex., for defendants.

## MEMORANDUM OPINION

MAHON, District Judge.

Upon motion and pursuant to Rule 52 Federal Rules of Civil Procedure, the Court withdraws its Memorandum Opinion in this cause ·entered September 4, 1974, and enters the following opinion.

This is a civil rights action brought pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983. Plaintiff alleges violations of her First and Fourteenth Amendment rights and seeks damages and declaratory relief against her former employers, White Settlement Independent School District;[1] its school board trustees, individually, and in their official capacity, and its superintendent, individually, and in his official capacity.

Plaintiff, Eda Grubbs, is a school teacher. For the school years 1964 to 1967 she taught in White Settlement I. S.D. During the school year 1967–68, she taught in another school system but returned to White Settlement I.S.D. in 1968 where she served as a counselor and/or classroom teacher until she was terminated in June 1972.

This Court must initially determine its jurisdiction over this cause in the light of City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). Prior to *City of Kenosha, supra,* there would be no doubt that this Court would have entertained this action. Harkless v. Sweeney Independent School District, 427 F.2d 319, 321–23 (5th Cir. 1970) cert denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439

1. Hereinafter "White Settlement I.S.D."

(1971). In defining the parameters of 42 U.S.C. § 1983 the Supreme Court held that municipal corporations are outside "its ambit for purposes of equitable relief as well as for damages." City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109, 116 (1973). With this illumination, I must conclude that this Court is without jurisdiction as to defendant White Settlement I.S.D. and as to the named school trustee defendants in their official capacity insofar as their § 1983 claim.[2] Campbell v. Masur, 486 F.2d 554 (5th Cir. 1973) on remand, Civil No. 70–C–156 (S.D.Tex. June 24, 1974).

The question yet remains about jurisdiction pursuant to 28 U.S.C § 1331. Defendants assert that there is no basis for jurisdiction under this section, because the allegations of the prerequisite amounts fail. They urge that the only prayer for damages in excess of ten thousand dollars is the one for punitive damages, without specification as from which defendants they are sought. This, they contend, is an insufficient jurisdictional allegation. These assertions are without merit and are rejected. It is hornbook law that the amount in controversy is to be found in plaintiff's "well pleaded complaint," if at all. Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). It is only where it appears to a "legal certainty" that plaintiffs will not be entitled to the jurisdictional amount pled, that jurisdiction will be denied under § 1331. St. Paul Indemnity Company v. Red Cab Company, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Jones v. Landry, 387 F.2d 102 (5th Cir. 1967). Assured of its jurisdiction under § 1331, the Court proceeded to trial on July 10, 1974. At that hearing testimony was heard from all parties to the lawsuit.

There is no question but that Ms. Grubbs had heard that there was a position of counselor opening in the White Settlement I.S.D.; that she sought such position as a counselor and that she ultimately obtained employment with White Settlement I.S.D. as a counselor. The questions center on the legal status of such a counselor employed under a probationary teaching contract. These facts weaken plaintiff's contentions that she was misled into believing she held a teaching contract for the entire period of her employment with White Settlement I.S.D.[3] At the time of Ms. Grubbs' return in 1968 all professional personnel in the White Settlement I.S. D., with the exception of superintendent, building principals and possibly vice principals, were employed under similar contracts. In fact, the same preprinted form was used for teachers, counselors, and other administrators. The form is denominated "Probationary Contract of Employment," and describes defendant school district as "the employer" and the employee as "the teacher." Pertinent portions of that contract include:

" . . . 3. *It is understood and agreed by the parties to this agreement that the Superintendent of Schools shall have the right to assign such duties to the Teacher as the Employer shall deem proper,* and may from time to time, assign or reassign the Teacher to other or additional duties then those contemplated hereunder. (emphasis supplied).

\*　　\*　　\*　　\*　　\*　　\*

5. *The Employer may terminate the employment of the Teacher at the End of the contract period set forth herein, if, in the judgment of the Employer, the best interest of the school district will be served.* Provided, however, notice of intention to terminate the employment shall be given by

---

2. Because the Court finds itself vested with 28 U.S.C. § 1331 jurisdiction, it need not address the question of whether it has § 1343 jurisdiction over the school trustees in their individual capacities. There is no doubt as to the Court's jurisdiction over the school

superintendent in his individual capacity. Ingraham v. Wright, 498 F.2d 248 (5th Cir. 1974).

3. See Pre-trial Order in this cause filed May 20, 1974. (Plaintiff's claim No. 12).

the Employer to the Teacher on or before the 1st day of April preceding the end of the employment term fixed herein." (emphasis supplied).

Other provisions specify the time periods in which notice of terminations must be given and the rights of the teacher to a hearing upon such termination.[4]

■ The Court finds that although the preprinted contract form was identical for counselors and teachers, there were distinctions in the typed in terms to sufficiently apprise plaintiff of the fact that she was employed as a counselor and not as a classroom teacher. The testimony revealed that the most significant of these distinctions were the length of time (counselors worked a longer school year) and the salary (counselors received a greater salary). It is clear that plaintiff actively sought a counseling job, that she was hired by defendant as a counselor, that she was assigned counseling duties and performed such duties. The Court feels it unnecessary to reach the question of whether or not time of service spent as a counselor under a probationary teacher's contract counts toward tenure and the rights which inure to a teacher under Vernon's Tex.Educ.Code Ann. § 13.102.

■ After serving under three successive probationary contracts of employment as a counselor, Ms. Grubbs was not offered a continuing contract but rather was offered a probationary contract for a fourth year and was assigned under that contract to classroom teaching. The facts surrounding that change in status are controverted. Ms. Grubbs asserts that her building principal told her that the school administration wanted to observe her an extra year in the classroom before offering her a continuing contract. She testified that a commitment to this effect was made by one of the trustees of the school board at an April 20, 1971,

meeting. This testimony conflicted with that of several of the school board trustees. A statement by an individual trustee at a meeting does not have the effect of committing the school board to a particular course of action or of committing the school district to any kind of agreement. An examination of what did transpire during the spring of 1971 is useful to show Ms. Grubbs' status in 1972, i.e., that she was teacher under a probationary contract and was thus entitled to the statutory safeguards of the Texas Education Code regarding such teachers.

There is no doubt that a meeting of the school board did occur on April 20, 1971, and that Ms. Grubbs was in attendance. The dispute concerns what transpired at that meeting. Unhappily the minutes of that meeting were lost and unavailable to the Court. This loss caused the Court some initial concern. The Court's concern was allayed to some extent, however, by the minutes of a prior school board meeting on March 16, 1971. These minutes contained the following entry:

"Motion was made and seconded that Mrs. Grubbs, if she has been holding a probationary contract, only assigned as a student counselor, that she be given a probationary contract for next year with stipulation she will not be assigned as counselor, and if she is holding a probationary contract and an employment contract as a student counselor, that she be reverted back to probationary contract and her employment contract as a student counselor be cancelled. It was the opinion of the board that she was not due a continuing contract. Motion carried unanimously."

This minute indicates to the Court that the school board trustees were aware of the ambiguities concerning plaintiff's status, and were proceeding very circumspectly. The Court does not find it unreasonable to conclude that in the

---

4. In June 1972, new contract forms were initiated. The Court was informed that distinct contracts are now given to administrative personnel as opposed to teaching personnel.

light of what occurred in the March 16, 1971, meeting, the school board members would be cautious in whatever they said to Ms. Grubbs on April 20th of that year. Ms. Grubbs' testimony concerning this meeting is that she was unaware that the change in status was inconsistent with her being granted a continuing contract the following year; that is, that her three years service as counselor was not to count as toward a continuing contract. The testimony of the then school board president sharply conflicts with plaintiff's. The Court concludes that this testimony best demonstrates what occurred at that meeting. Recalled as a rebuttal witness, defendant, Ms. Jody Gault's testimony reveals the following on examination by her attorney:

"Q. Mrs. Gault, this is with reference to Mrs. Grubbs' testimony just a moment ago concerning the hearing on April of 71 concerning the change from counselor to teacher status.

A. Yes.

Q. You were president of the board at that time were you not.

A. Yes, sir.

Q. You presided at that meeting

A. Yes.

Q. And do you recall that I was present at that meeting as counsel for the school district

A. Yes, you were.

Q. Do you recall my advising the Board that the legal issues before them on this question included the issue of whether the Counselor service counted toward the three year requirement for tenure

A. Yes, sir.

Q. This was the subject that the Board had acted upon and said it didn't count in the March '71 meeting prior to that.

A. Yes, sir.

Q. And was Mrs. Grubbs present in the Board room at the time I instructed the Board that that was one of the issues.

A. Yes, sir, she and her attorney.

Q. She and her attorney were both present at that time?

A. Yes, sir."

The Court finds that this testimony demonstrates that plaintiff was present at the school board meeting of April 20, 1971; that she was represented by counsel; that she and her counsel were fully advised of the fact that the issue of Ms. Grubbs' counselor service counting toward a continuing contract was before the school board. This finding is additionally supported by the above quoted minute of the March 16, 1971, school board meeting. The Court finds that regardless of what did transpire at the April 20th meeting, Ms. Grubbs' status whether with or without a reasonable expectation of reemployment was determined not by virtue of what commitments, if any, were made to her, but rather by the terms of Tex.Educ. Code Ann. § 13.101 et seq. Ms. Grubbs accepted the probationary contract and did serve in the capacity of classroom teacher for the school year 1971–72 under that contract. On March 22, 1972, she was notified by the school board that she would be terminated effective June 5, 1972.[5] The circumstances surrounding this termination are at the heart of the instant controversy. Ms. Grubbs asserts that she had her annual evaluation meeting with her building principal on March 6, 1972. At that time her principal recommended to the defendant superintendent that she be given a continuing contract.[6] He also related to the superintendent Ms. Grubbs' concern over her status. The final result was that the superintendent failed to recommend plaintiff for either a probationary contract or continuing contract. He be-

5. At the instant hearing the defendants preferred the terminology of "failure to reemploy." Plaintiff used "terminate". The result is the same and the Court will for practical reasons describe the circumstances of

Ms. Grubbs' departure from White Settlement I.S.D. as a termination.

6. Plaintiff's Exhibit No. 5; Teacher Evaluation Form.

lieved that Ms. Grubbs had given him an ultimatum and recommended her termination. Ms. Grubbs asserts that she merely told her principal that she felt that under the Texas Education Code she was due a continuing contract because she had served under a probationary one for four years.[7] She contends that she told him that her understanding of the law was that the school board options were twofold: grant a continuing contract or terminate. The testimony reveals that Ms. Grubbs was informed at the time of this evaluation meeting that she was going to be offered another probationary contract for school year 1972–73. At this time, Ms. Grubbs told her principal that the school board could not do this; that they must under Texas law either give her a continuing contract or terminate her. The school superintendent, Dr. Eichman, testified that he could not, in view of his understanding of the school board's position and their action of March 1971 in reverting Ms. Grubbs back to probationary teacher status, recommend her for a continuing contract. He testified that he thus viewed Ms. Grubbs' position as being ultimatum in form and formulated his determination that it would be in the best interest of the school district that she not be rehired. In effect, he resolved any doubts by recommending to the school board that it exercise its lawful option to terminate plaintiff. Although Ms. Grubbs testified that she did not intend her statements to be an ultimatum, the Court finds that considering all the circumstances surrounding the occurrence, it was not unreasonable for Dr. Eichman to consider them as such. Both the superintendent's action and the school board's action were at all times in accord with the pertinent provisions of the Texas Education Code. The superintendent's actions become even more reasonable when understood in context with his relationship to the events of 1971 wherein Ms. Grubbs was transferred from her counseling duties. The superintendent was relatively new to his position in March 1972. He had assumed his duties in May 1971. The school superintendent is entrusted by the school board of White Settlement I.S.D. with the duty of recommending professional personnel employment. When he first assumed his duties with White Settlement I.S.D., the change of Ms. Grubbs' status to that of a classroom teacher had already occurred. His employment was subsequent to both school board meetings concerning plaintiff in the spring, 1971. He was not in attendance at either the March 16, 1971, meeting, quoted from above, or at the April 20, 1971, meeting at which Ms. Grubbs asserts a commitment to give her continuing contract status was made. Dr. Eichman stated that he made his determination not to recommend plaintiff for reemployment on this basis of what Ms. Grubbs' principal told him about what she felt her status to be. Dr. Eichman's testimony was that at this point he felt it would be in the best interest of the school district if Ms. Grubbs was terminated.[8] The notice to Ms. Grubbs

7. Tex.Educ.Code Ann. § 13.102.

8. There is one aspect of special concern to the Court with regard to White Settlement I.S.D.'s own procedures. Section 4.1(b) of their rules and regulations provides that the school board will act on the basis of the school superintendent's recommendation. Such recommendation is committed to his best judgment. Section 4.20 describes the procedure for recommending non-renewal of a teacher's contract. It provides in essence that the superintendent will act on a teacher's rating sheet completed by the principal and that such rating sheet should reflect the principal's recommendation for non-renewal.

(Plaintiff Exhibit No. 9, pp. 15, 19). Plaintiff's rating sheet for her March 6, 1972, evaluation reflects a favorable recommendation. In this regard it appears that defendants were somewhat lax in their approach to this matter. (Plaintiff's Exhibit No. 5). I find, however, that this laxity does not rise to constitutional proportions. It appears that from Section 4.1 of the school district's procedures that the superintendent's "best judgment" may well override the Section 4.-20 requirements. Alternatively, the principal's statements to the superintendent may have in themselves constituted a recommendation for non-renewal. This Court is limited in its remedy for such a situation.

was sent subsequent to the March 22, 1972, meeting wherein the Board accepted Dr. Eichman's recommendation of employment of teachers for the following year. Plaintiff was the only teacher not recommended to be retained as an employee.[9] Subsequent to the receipt of her termination notice Ms. Grubbs requested a public hearing on the reasons for her termination. Such a hearing was scheduled and held at noon, April 18, 1972, after a series of written correspondence between plaintiff and the defendant school board trustees.[10] At that meeting of April 18, 1972, a court reporter was present. The record of those proceedings is in evidence. That record reveals that plaintiff had ample opportunity to explore the basis of her termination; she was represented by able counsel; she had an opportunity to have witnesses testify on her behalf and in fact did so; and was allowed to cross examine through counsel, the superintendent, Dr. Eichman who recommended that she be terminated. A full development of the facts emerged.

The gravamen of Ms. Grubbs' action is that she was improperly terminated because of her assertion of what she felt was her legal right to a continu-

ing contract. Alternatively, she complains of a lack of due process in the entire proceedings concerning her termination. Before inquiry into these questions, it would be proper to examine the applicable Texas Statutes governing teacher-School District relations. At all times at issue in this cause it is undisputed that plaintiff was serving under a probationary contract.[11] The pertinent statutes are Tex.Educ. Code Ann. § 13.101 et seq. It has been stipulated by the parties that defendant, White Settlement I.S.D. had adopted the provisions of such statutes and their predecessors, known as the tenure provisions as regards to classroom teachers but had not done so as to administrators. Tex.Educ. Code Ann. § 13.102 provides in pertinent part:

" . . . Any person who is employed as a teacher by any school district . . . who has not been employed by such district for three consecutive school years . . . , shall be employed under a 'probationary contract,' . . . provided further that no such contract shall be made which extends the probationary contract period beyond the end of the third consecutive school year of such

" . . . If a procedural deficit appears, the matter should, at that point, be remanded to the institution for its compliance with minimum federal or *supplementary academically created standards* . . ." Ferguson v. Thomas, 430 F.2d 852, 858 (5th Cir. 1970) (emphasis supplied). In this instance the defendants have offered to conduct any additional hearing which may be required. The Court feels that where there is much discretion vested by statute in the school board, and much discretion vested by the school board in the superintendent, that a remand on this point would be a useless gesture. Any prejudice that inured to plaintiff would necessarily be cured upon hearing by the school board. I find that this was done in the hearing of that body on April 18, 1972. *See also*, text accompanying footnote 13, *infra*.

9. Plaintiff's Exhibit No. 8. Minutes of White Settlement School Board meeting; March 21, 1972.

10. There were five letters altogether. The first one was from the School Board to plaintiff notifying her of her termination and

of a right to a hearing. The second one was from plaintiff to the Board requesting a hearing. The third letter is the significant one. It is from the chairman of the School Board to plaintiff notifying her of the hearing date and explaining that "our reason for not renewing your contract is your general attitude toward the administration." (Plaintiff's Exhibit No. 10, letter to Ms. Grubbs dated April 10, 1972). The Court would have viewed this letter in a more unfavorable light if no hearing had been held. As previously stated, however, the Court believes that any prejudice to plaintiff was ameliorated by the hearing of April 18, 1972. The last two letters consist of one from Ms. Grubbs requesting a postponement of the hearing to a more convenient date and the reply granting such request.

11. Probationary and continuing contracts are terms of art as used in the Texas Education Code. A probationary contract is that defined in Tex.Educ.Code Ann. § 13.102. A continuing contract is tenure: once on a continuing contract a teacher need not be recommended for reemployment and can only be terminated for cause.

teacher's employment by the school district, *unless the board of trustees determines and recites that it is in doubt whether the particular teacher should be given a continuing contract, in which event a probationary contract may be made with such teacher for a term ending with the fourth consecutive school year of such teacher's employment with the school district, at which time the employment of such teacher by such school district shall be terminated,* or such teacher shall be employed under a continuing contract as hereinafter provided." (emphasis supplied).

Tex.Educ. Code Ann. § 13.103 concerning termination of personnel serving under a probationary contract provides in pertinent part:

"*The board of trustees of any school district may terminate the employment of any teacher holding a probationary contract at the end of the contract period, if in their judgment the best interests of the school district will be served thereby*; provided, that notice of intention to terminate the employment shall be given by the board of trustees to the teacher on or before April 1, preceding the end of the employment term fixed in the contract . . . " (emphasis supplied).

Tex.Educ. Code Ann. § 13.104 provides:

"In event a teacher holding a probationary contract is notified of the intention of the board of trustees to terminate his employment at the end of his current contract period, he shall have a right upon written request to a hearing before the board of trustees, and at such hearing, the teacher shall be given the reasons for termination of his employment. After such hearing, the board of trustees may confirm or revoke its previous action of termi-

nation; but in any event, the decision of the board of trustees shall be final and non-appealable."

For the sake of argument, let us assume plaintiff was at all times a teacher within the purview of § 13.102 and not an administrator. This posture is the one most favorable to Ms. Grubbs. If she were classified as an administrator for the time she served as counselor, i.e., 1968–71, then there is no doubt that she would be a teacher with less service toward a continuing contract and that any reasonable expectancy of reemployment would be less, if it existed at all.[12] If Ms. Grubbs' time as a counselor was indeed administrative, then she would be a classroom teacher with one year's service under a probationary contract. In such a posture she would be entitled to only those procedures accorded her under the relevant portions of the Texas Education Code. The Court finds that these procedures were adhered to. Plaintiff received her notice of termination prior to April 1st. Tex.Educ. Code Ann. § 13.103. She received a hearing at which the issues were fully and fairly developed. At that time the board voted to reaffirm their action of termination. Tex.Educ. Code Ann. § 13.104. I conclude as a matter of law that Ms. Grubbs, if she had been classified as an administrator for the school years 1968–71, then her reclassification to teacher under a probationary contract was in conformity with Tex.Educ. Code Ann. § 13.108. Such a reclassification would place her back in the ambit of those statutes pertaining to teachers who were serving under a probationary contract.

If, on the other hand, Ms. Grubbs was serving as a teacher and did come within the scope of § 13.102 for the entire four years, then the actions of defendants can be examined against stricter standards. Assuming *arguendo*, she was in the fourth year as a teacher under a

12. Tex.Educ.Code Ann. § 13.108 provides:
"The board of trustees *may grant* to a person who has served as superintendent, principal, supervisor, or other person employed in any administrative position for which certification is required, at the completion of his service in such capacity, a continuing contract to serve as a teacher, and the period of service in such other capacity shall be construed as contract service as a teacher within the meaning of this subchapter." (emphasis supplied).

probationary contract, and then, only if she otherwise had the prerequisite reasonable expectation of reemployment, then with such an expectation, it would be clear that she would have been at least entitled to:

"(a) be advised of the cause or causes for [her] termination in sufficient detail to fairly enable [her] to show any error that may exist,

(b) be advised of the names and the nature of the testimony of witnesses against [her],

(c) at a reasonable time after such advice [she] must be accorded a meaningful opportunity to be heard in [her] own defense,

(d) that hearing should be before a tribunal that both possesses some academic expertise and has an apparent impartiality toward the charges . . ."

Ferguson v. Thomas, 430 F.2d 852, 856 (5th Cir. 1970). In addition to these minimums, she would be entitled to whatever safeguards White Settlement I.S.D. provided by their own rules and regulations.[13] The caveat of Ferguson v. Thomas, *supra,* should be noted at this time.

"[T]he standards of procedural due process are not wooden absolutes. The sufficiency of procedures employed in any particular situation must be judged in the light of the parties, the subject matter and the circumstances involved." Id. at 856.

The *Ferguson* standards, while they relate to "termination for cause", must be viewed in conjuncture with the Texas Education Code. It is in this matrix that Ms. Grubbs' situation must be evaluated. Assuming *arguendo,* she had a reasonable expectation of reemployment, even then the school board and the other defendants would have had options. Ms. Grubbs was aware of those options. Whatever the circumstances of her conversations to her principal about her status, their import was clear and a correct statement of Texas law. The school

board had two options; grant a continuing contract or terminate. These options were committed by Texas law to the sound discretion of the school board. Each was open. Each was viable. It was clear from the testimony that the school board trustees and the superintendent were acting in what they thought was the best interest of the school district.[14] In this context then, I conclude that even if Ms. Grubbs had been entitled to the *Ferguson* standards, those standards were met in that:

(a) Ms. Grubbs was advised of the causes for her termination. Although the advisement in this instance was not the most lucid, I find that Ms. Grubbs did possess actual knowledge of the reasons behind her termination, i. e., that her termination resulted from Dr. Eichman's action after he had talked with her principal;

(b) she was aware of the interchange between her principal and Dr. Eichman and knew that this interchange was the framework which gave support to the superintendent's recommendation for termination;

(c) she was accorded a reasonable time after such notice before a hearing was held on her termination; the hearing was indeed postponed at her request to allow additional time;

(d) the hearing was before a tribunal that possessed both some academic expertise and an apparent impartiality toward the matter. Compare, Lucas v. Chapman, 430 F.2d 945, 947 (5th Cir. 1970). Thus, judged even by the *Ferguson* standards, Ms. Grubbs' termination was not unlawful. Because she was a teacher serving under a probationary contract, plaintiff need not have been accorded these procedures but I find that she was in fact given such.

The Court concludes that it is unnecessary to decide whether plaintiff's service as counselor was administrative or teaching under a probationary contract. Whatever her status, her termination in March 1972 was lawful and comported

---

13. See footnote 8, *supra.*

14. See Ferguson v. Thomas, 430 F.2d 852, 858–89 (5th Cir. 1970).

with due process standards. If Ms. Grubbs was a teacher under a probationary contract, the school board was acting pursuant to Tex.Educ. Code Ann. § 13.102 et seq. These statutes clearly provide that a teacher may be terminated without cause during the probationary term, as long as notice of such termination is given prior to April 1st and that a hearing be provided subsequent to such notice. The only requirement for cause is the discretion of the school board, i. e., that such termination would be in the best interest of the school district. These statutes were adhered to and did provide due process to plaintiff. Alternatively, if Ms. Grubbs was administrative personnel during her service as counselor, then the school board in its action of March 1971 in reclassifying Ms. Grubbs to classroom teacher, was acting pursuant to the statute in choosing in its discretion not to construe her ". . . period of service in such other capacity . . ." as contract service as a teacher. Tex.Educ.Code Ann. § 13.108. In this situation, Ms. Grubbs would again be in the category of a teacher in probationary status and subject to termination without cause subject only to notice, hearing and a determination that the termination is in the best interest of the school district. Tex.Educ. Code Ann. § 13.102 et seq. For either alternative, Ms. Grubbs was accorded the appropriate statutory procedures. I conclude that in each instance these statutory procedures comport with due process requirements. See, Lowrance v. Barker, 347 F.Supp. 588, 593–94 (E.D.Tex.1972), affd., 480 F.2d 923 (5th Cir. 1973). A hearing was held by the school board for the express purpose of reexamining the board's previous decision. The fact that such hearing was subsequent to plaintiff's termination does not mean that it failed in due process. *Compare,* Moore v. Knowles, 333 F.Supp. 53, 57 (N.D. Tex.1971) (no hearing provided); Cummins v. Board of Trustees, 468 S.W.2d 913, 915 (Tex.Civ.App.-Austin 1971, no writ) (school board refused to fully develop facts at hearing). Whatever defects, if any, may have existed in the hearing provided by the school board for Ms. Grubbs in 1972, I find they were rectified in the instant hearing.[15] The Court reiterates that at no time is it decided that plaintiff in this cause was either a teacher or an administrator for the purposes of § 13.102 et seq. Tex. Educ.Code Ann. A resolution of that issue is not necessary for a proper disposition of this cause. If plaintiff was an administrator, a teacher under a probationary contract, or even if it is assumed *arguendo,* that she was a teacher with a reasonable expectation of reemployment, then it would make no difference. For each of the above described circumstances, the result is yet the same. Defendant, White Settlement I.S.D.'s actions came within constitutional and statutory standards and plaintiff was accorded all the procedural safeguards she was entitled.

Accordingly, it is ordered that plaintiff take nothing in this cause and that this cause be dismissed on the merits and that each party bear its own costs of action.

The above opinion constitutes findings of fact and conclusions of law in this matter. The District Clerk is directed to enter a final judgment in this cause pursuant to Rule 58 Fed.R.Civ.P.

---

15. The curative procedures of a hearing before this Court should be noted. "Ideally, under dictum in Ferguson v. Thomas . . ., the district court in the instant case would have been well-advised had it confined its rulings to a review under the substantial evidence rule of the testimony presented to the faculty committee and to a determination on the merits of appellants' procedural points. We do not fault the district court for failing to follow the dictum of *Ferguson,* however, for at the time the district court held its second hearing in this case, *Ferguson* had not been decided. Moreover, under the clear holding of Ferguson, we cannot now say that it is reversible error for a district court to provide curative procedures. For the result in *Ferguson* stands for the proposition that when curative procedures have been followed by the district court, it is '[un]necessary for [the] cause to be remanded to the district court for referral back to the school board. . . ." Fluker v. Alabama State Board of Education, 441 F.2d 201, 208, n. 15 (5th Cir. 1971).